**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS EL PASO DIVISION**

| | | |
|---|---|---|
| **CANAL INSURANCE COMPANY** | **§** | |
| | **§** | |
| **Plaintiff,** | **§** | |
| | **§** | |
| **v.** | **§** | **EP-13-CV-156-KC** |
| | **§** | |
| **XMEX TRANSPORT, LLC, et al.,** | **§** | |
| | **§** | |
| **Defendants.** | **§** | |

**ORDER**

On this day, the Court considered Defendant Jessica Lopez's Motion to Dismiss or Abate Plaintiff's Suit for Declaratory Judgment, ECF No. 43 (the "Motion") in the above-captioned case (the "Case"). For the reasons set forth herein, the Motion is **DENIED**.

## I. BACKGROUND

The Case arose from the deaths of Lorenzo Munoz ("Munoz") and Roger Franceware ("Franceware") (collectively "Decedents") in a single-vehicle tractor-trailer accident on or about August 17, 2010. *See* Compl., ECF No. 1, ¶¶ 19-32; ECF No. 1-5 at 6-7; ECF No. 1-7 at 4. The Decedents were traveling in a 2007 International truck bearing Vehicle Identification Number 2HSCNSCR57C432761 (the "Truck") which veered off Interstate 20 in Mitchell County, Texas, crashed, and caught fire. *See id*.

The survivors of each Decedent filed lawsuits in Texas state court (the "State Court Litigation") alleging that numerous parties associated with the Truck are liable for Decedents' personal injuries and wrongful deaths under various legal theories.[1] The posture of the State Court Litigation as of the inception of the Case was as follows:

[1] The two state court lawsuits have been consolidated for trial in the District Court of El Paso County, Texas, 168th Judicial District. *See Canal Ins. Co. v. XMEX Transport LLC*, No. 3:12-cv-178, 2013 WL 663742, at *1 (E.D. Tenn. Feb 25, 2013).

Jessica Lopez ("Lopez") brought the first underlying lawsuit (the "Lopez Lawsuit") as administratrix of Franceware's estate and as next friend of his minor children A.F. and J.F.O. The Lopez Lawsuit alleges that Munoz was driving the Truck; that Moore Freight Service, Inc. ("Moore"), XMEX Transport, LLC ("XMEX"), and/or Charles "Chip" Strader ("Strader") were in control of the Truck;[2] and that A-Z Trailers, Inc. ("A-Z"), Dykes & Dykes Trailers, Inc. ("Dykes & Dykes"), Goal Transports, Inc. d/b/a/ Calvin K. Transportation, LLC ("Goal Transports") and Jose M. Gomez ("Gomez") were the owners, operators, lessors, and/or lessees of the trailer. *See generally* ECF No. 1-9. Rosa Franceware, Franceware's widow, intervened in the Lopez Lawsuit in her own capacity and as next friend of Franceware's minor child E.L.F., alleging that Munoz was driving the Truck; that Moore owned the Truck; and that Lorenzo Munoz was an employee of Moore. *See generally* ECF No. 1-8.

Munoz's widow Lorena Munoz and his daughter Virginia Munoz brought the second underlying lawsuit (the "Munoz Lawsuit"). Lorena Munoz sued individually, on behalf of Munoz's estate, and as next friend of his minor children L.M. and C.M. The Munoz Lawsuit alleges that Munoz was employed at the time of the accident by one or more of Moore, A-Z, XMEX, Strader, and/or Transportes Americanos; that Moore owned the Truck tractor, which was leased to Transportes Americanos; that A-Z and/or Goal Transports owned, maintained, and serviced the trailer, which was leased to Trans Front, Inc. ("Trans Front") and SMTC Mex-Hold; that Trans Front and SMTC Mex-Hold arranged for the loading and transporting of the trailer; and that the "truck may have been driven by Roger Franceware." *See* ECF No. 1-5 at 6-7. Rosa Franceware intervened in the Munoz Lawsuit, alleging, as she did in the Lopez Lawsuit, that Munoz was driving the Truck; that Moore owned the Truck; and that Lorenzo Munoz was an employee of Moore. *See* ECF No. 1-3, at 3.

---

[2] An earlier version of the Petition in the Lopez Lawsuit alleged explicitly that Moore, XMEX, and/or Strader owned the Truck. *See* ECF No. 1-7 at 5. The live petition does not use the word 'own,' but it alleges a) that Moore, XMEX, and/or Strader negligently allowed Munoz to "operate its vehicle," and b) that those parties "fail[ed] to properly track and secure it [sic] equipment." *See* ECF No. 1-9 at 5.

On May 7, 2013, Plaintiff Canal Insurance Company ("Canal") instituted the Case by filing a Complaint for Declaratory Judgment, ECF No. 1 (the "Complaint").[3] All of the Defendants in the Case are parties to the State Court Litigation. *Compare* Compl. ¶¶ 1-16, *with* ECF No. 1-5 at 2, *and* ECF No. 1-9 at 1-2. All the parties to the State Court Litigation, except Moore, are defendants in the Case. *See id*.[4] Canal is not a party to the State Court Litigation. *See* ECF No. 1-5 at 2, ECF No. 1-9 at 1-2.

Canal alleges that it issued a vehicular insurance policy to XMEX numbered PIA06033700 (the "Policy") on August 6, 2010. *See* Compl. ¶ 33; Policy, ECF No. 1-10. Canal further alleges that XMEX, Strader, A-Z, Dykes & Dykes, and Goal Transports have demanded that Canal provide a defense and indemnify them and XMEX's alleged driver in the State Court Litigation. Compl. ¶ 44. Canal asserts that it has no duty under the Policy or any endorsements thereto to defend or indemnify any of those parties, Munoz, or Franceware (collectively the "Alleged Insureds"). Compl. ¶ 44. Canal therefore seeks, among other things, declarations that no coverage is afforded under the Policy for the claims made in the State Court Litigation, and that it need not provide a defense to the Alleged Insureds in the State Court Litigation. *See* Compl. 12.

In brief, and to paraphrase, Canal alleges that the Policy affords no coverage to the Alleged Insureds for the following reasons:

a) only vehicles owned by the insured and described in the declarations are covered by the Policy, but the Truck was not owned by XMEX nor described in the declarations;
b) the Policy contains an "employee exclusion" for bodily injuries to employees of the insured arising in the course of their duties, and the underlying lawsuits allege or claim that the Decedents were employed by XMEX;

[3] Prior to filing the Case, Canal brought a similar declaratory judgment action in the United States District Court for the Eastern District of Tennessee. That court declined to hear the case pursuant to its discretionary authority under 28 U.S.C. § 2201(a), refused to grant a change of venue to the United States District Court for the Western District of Texas, and found that it lacked personal jurisdiction over some of the defendants. *See Canal Ins. Co. v. XMEX Transport LLC*, No. 3:12-cv-178, 2013 WL 663742 (E.D. Tenn. Feb 25, 2013). The Court discusses the implications of the Tennessee decision below.

[4] A-Z, Dykes & Dykes, Goal Transports, and Gomez moved to join Moore under Federal Rule of Civil Procedure 19(a), or in the alternative to dismiss for failure to join a party under Federal Rule of Civil Procedure 12(b)(7). *See* Motion, ECF No. 26. The Court denied the motion to join Moore. *See* Order, ECF No. 39.

c) the Policy contains a "fellow employee exclusion" for bodily injuries arising in the course of a fellow employee's performance of their duties, and the underlying lawsuits allege or claim that the Decedents were employed by XMEX;
d) Decedents were statutory employees of XMEX under 49 C.F.R. § 390.5 because they were engaged in transportation activities on behalf of XMEX, thus the employee exclusion and fellow employee exclusion bar coverage;
e) the Policy contains an "occupant hazard exclusion" for bodily injuries sustained by any person in the vehicle, and the underlying lawsuits allege that Decedents were in the Truck;
f) the Policy defines an insured as the named insured and "anyone else using with your permission a covered auto you own, hire, or borrow," but none of the Alleged Insureds (other than XMEX) was a named insured or was using a covered auto;
g) the underlying lawsuits include a cause of action sounding in strict product liability, which the Policy does not cover;
h) the Policy's MCS-90 endorsement does not apply to injury or death of the insured's employees in the course of their employment, and the underlying lawsuits allege or claim that the Decedents were employed by XMEX;
i) the MCS-90 endorsement applies only to operations of the named insured if it was a "for-hire motor carrier operating motor vehicles transporting property in interstate or foreign commerce at the time of the accident," but upon information and belief, those conditions are not met.

*See* Compl. ¶¶ 33-43.

By the Motion, Lopez requests that the Court dismiss the Case, as the Court may do at its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). In the alternative, Lopez requests that the Court abate the Case in deference to the State Court Litigation. *See* Mot. 1. Lorena and Virginia Munoz have joined in and adopted by reference Lopez's arguments. *See* ECF No. 45. Canal has filed a Response to the Motion, ECF No. 47 ("Response"), to which Lopez has filed a Reply, ECF No. 48 ("Reply").

## II. DISCUSSION

### A. Standard

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in pertinent part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In *Orix Credit Alliance v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000), the Fifth Circuit set forth three inquiries that district courts must make to determine whether to adjudicate a declaratory judgment action: first, whether the

case is justiciable; second, whether the court has authority to grant declaratory relief; and third, whether the court should exercise its discretion to decide the action. *See id.*; *AXA RE Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 319-21 (5th Cir. 2006) (citations omitted).

The parties assert that the Case is justiciable and that the Court has the authority to grant relief. *See* Compl. ¶¶ 17, 45-46; Mot. ¶¶ 1-3. The Court agrees. First, for the Case to be justiciable, there must be an actual controversy between the parties. *See* 28 U.S.C. § 2201(a). "As a general rule, an actual controversy exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Orix Credit Alliance*, 212 F.3d at 896 (quotation marks and citation omitted). Courts routinely hold that controversies over whether an insurer must defend and indemnify its insured in other litigation are of sufficient immediacy and reality to be justiciable. *See, e.g.*, *Day*, 162 F. App'x at 319, *Allstate Texas Lloyds v. Sawyer*, No. 3:07-CV-0360-G, 2007 WL 2471057, at *2 (N.D. Tex. Aug. 31, 2007) (citations omitted). The Court accordingly finds that the Case presents a justiciable controversy. Second, the Court lacks the authority to grant relief only if the following three conditions are met: "(1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [the Anti-Injunction Act]." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 n.1 (5th Cir. 2003) (citation omitted). The Anti-Injunction Act does not apply when there is no pending state court action between the federal declaratory plaintiff and any of the declaratory defendants. *See id.* at 387-88. Canal is not a party to the State Court Litigation. The Anti-Injunction Act therefore does not apply because there is no pending state court action between Canal and any of the Defendants.[5] The Court accordingly finds that it has the authority to grant relief.

Because the Case is justiciable and the Court has the authority to grant relief, the Court must decide whether to exercise its discretion to decide the action. *See Orix Credit Alliance*, 212 F. 3d at 895.

[5] The Court need not address the other two factors in this inquiry because the Court lacks authority to grant relief only if all three are met.

The parties vigorously dispute whether the Court should do so. The Court addresses that question in the balance of this Order.

The Declaratory Judgment Act "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Sherwin-Williams Co* 343 F.3d at 389 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* (citation omitted). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* (citation omitted).

In *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) the Fifth Circuit set forth seven nonexclusive factors that district courts "must consider in determining whether to dismiss a declaratory judgment." *Id.* Those factors are:

1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
3) whether the plaintiff engaged in forum shopping in bringing the suit;
4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
5) whether the federal court is a convenient forum for the parties and witnesses;
6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and
7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* (citation omitted).

After the Fifth Circuit decided *Trejo*, the Supreme Court held in *Wilton* that a district court should determine whether to decline jurisdiction over a declaratory judgment action by using the six factors outlined in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) to "ascertain whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court." *Wilton*, 515 U.S. at 289. The nonexclusive *Brillhart* factors are:

1) the scope of the pending state court proceeding and the nature of the defenses open there;

2) whether the claims of all parties in interest can be satisfactorily adjudicated in [the state] proceeding;
3) whether necessary parties have been joined;
4) whether such parties are amenable to process in [the state] proceeding;
5) whether it would be "uneconomical" or "vexatious" to proceed where another suit was pending in state court; and
6) whether hearing the declaratory judgment action would represent "gratuitous interference with the orderly and comprehensive disposition of a state court litigation.

*Sherwin-Williams*, 343 F.3d at 389 (citing *Brillhart*, 316 U.S. at 494).

As the Fifth Circuit later explained in *Sherwin-Williams*, the test the Court articulated in *Trejo* embodies – as do the analogous formulations used by every other circuit – three overarching principles expressed by the *Brillhart* factors: federalism, fairness, and efficiency. *Id*. at 390-91; *see also Nationwide Prop. & Cas. Ins. Co. v. Lafarge*, No. 4:11-cv-14, 2011 WL 3702437, at *4 (S.D. Tex. Aug. 22, 2011) ("The *Trejo* factors are not applied mechanically. Rather, they are intended to address three fundamental aspects that should be considered when deciding whether to exercise jurisdiction over a declaratory judgment suit: federalism, fairness, and efficiency."). Thus, the Court must apply the *Trejo* factors and analyze them "in light of the overarching *Brillhart* principles" to determine whether to dismiss the case. *Sherwin-Williams*, 343 F.3d at 401.

**B. Analysis**

Canal argues cursorily that the Court should not use the *Trejo* factors in its analysis because "[n]either *Trejo* nor *Sherwin-Williams* involved coverage disputes, so neither case applies to the questions before this Court and should be distinguished." Resp. ¶ 25. This argument is unavailing. As set forth above, *Trejo* and *Sherwin-Williams* include no limiting language and thus apply by their own terms to all declaratory judgment actions. *See Sherwin-Williams*, 343 F.3d at 389-90. The Fifth Circuit has applied *Trejo* and *Sherwin-Williams* at least twice in insurance coverage disputes. *See Day*, 162 F. App'x at 319-21; *Am. Emp'rs' Ins. Co. v. Eagle Inc*., 122 F. App'x 700, 701, 703-04 (5th Cir. 2004). Moreover, district courts in the Fifth Circuit, this Court among them, regularly apply the *Trejo* factors in insurance coverage disputes. *See, e.g.*, *Darwin Select Ins. Co. v. Laminack, Pirtles & Martines, L.L.P*., No. H-10-5200, 2011 WL 2174970, at *3-4 (S.D. Tex. June 3, 2011); *Atl. Cas. Ins. Co. v. Ramirez*, 651 F. Supp. 2d 669, 674-

75 (N.D. Tex. 2009); *Admiral Ins. Co. v. Little Big Inch Pipeline Co*., 496 F.Supp. 2d 787 (W.D. Tex. 2007) (Cardone, J.); *Sawyer*, 2007 WL 2471057, at *2-5. The Court therefore rejects Canal's argument and proceeds with its application of the *Trejo* factors.

### 1. Application of the *Trejo* factors

The parties have submitted arguments as to whether each of the seven *Trejo* factors militates in favor of or against dismissal. The Court discusses each factor sequentially and addresses the parties' pertinent arguments.

#### a. Whether there is a pending state action in which all of the matters in controversy may be fully litigated

Lopez argues that all the matters in controversy may be fully litigated in the State Court Litigation because "[e]very question of fact that Canal invokes in this case . . . is present in (and critical to) the liability questions in the State Court Litigation." Mot. ¶ 10. Lopez stresses that although Canal is not a party to the State Court Litigation,

> the standard is whether all matters *may* be fully litigated in the pending state action. Canal's duty to indemnify is contingent on the outcome of the State Court Litigation, and there is no impediment to Canal's explicit inclusion in that case, should Canal be so inclined. The State Court Litigation totally encompasses every issue that could be raised in the present case[.]

*Id*. ¶ 11 (citations omitted).

Canal responds that the State Court Litigation will not resolve one matter in controversy in the Case: namely, whether Decedents were "statutory employees" of XMEX under 49 C.F.R. § 390.5, and thus subject to the Policy's "employee exclusion." Resp. ¶ 28. Canal further argues that "the issues to be litigated in this Court are whether Canal has a duty to defend or indemnify, not whether liability exists for XMEX." *Id* at 12.

Canal's second argument is closest to the mark. The threshold inquiry here is simply whether the State Court Litigation and the Case are "parallel." *Sherwin-Williams*, 343 F.3d at 392-94; *see also Wilton*, 515 U.S. at 290. Though there is no *per se* rule in the Fifth Circuit requiring district courts to retain jurisdiction when there is no parallel state proceeding, "the presence or absence of a pending parallel state

proceeding is an important" component of the analysis of this *Trejo* factor. *Sherwin-Williams*, 343 F.3d at 394.

"For the federal and state cases to be 'parallel,' they must 'involve the same parties and the same issues.'" *Sawyer*, 2007 WL 2471057, at *4 (citing *Exxon Corp. v. St. Paul Fire & Marine Ins. Co*., 129 F.3d 781, 785 (5th Cir. 1997)). The proceedings are parallel if there is an "identity of parties [and] issues in the state and federal court suits[.]" *Agora Syndicate v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) (citing *Wilton*, 515 U.S. at 290). Courts routinely apply this rule in insurance coverage disputes like the Case to find that proceedings are not parallel when the federal declaratory plaintiff is not a party to the state litigation. *See, e.g.*, *Day*, 162 F. App'x at 320; *Robinson Janitorial,* 149 F.3d at 373; *Hudson Specialty Ins. Co. v. King Inv. Co. of Louisiana*, Civil Action No. 13-5990, 2014 WL 108402, at *3-4 (E.D. La. Jan 10, 2014); *Ramirez*, 651 F. Supp. 2d at 684-85; *Sawyer*, 2007 WL 2471057, at *4; *Little Big Inch*, 496 F. Supp. 2d. at 791. Because Canal is not a party to the State Court Litigation, nor any pending state proceeding related to these events, the Case and the State Court Litigation are not parallel. *See Robinson Janitorial*, 149 F.3d at 373; *Day*, 162 F. App'x at 320.

It is of no consequence if, as Lopez avers, all of Canal's claims "*may* be fully litigated in the pending state action . . . . [because] there is no impediment to Canal's explicit inclusion in that case, should Canal be so inclined." Mot. 5-6. In *Robinson Janitorial*, the district court dismissed a declaratory action because the declaratory plaintiff could "intervene in the state court suit and seek the same declaratory judgment concerning its rights and responsibilities under the policy . . . [or] could file a separate declaratory judgment action in state court." 149 F.3d at 373. The Fifth Circuit reversed, holding that

> this is not what the Supreme Court meant in *Wilton* by use of the term 'parallel state proceedings,' for there is no identity of parties or issues in the state and federal court suits. [The declaratory plaintiff] is not a party to the state court liability suit, it is not a party in any pending state proceeding related to these events, and it could only bring the insurance issues before the state courts by affirmatively intervening in the pending liability action or commencing a separate, independent declaratory judgment action in state court.

*Id*. (citation omitted).

So too here, Canal is not a party to the State Court Litigation, "and it could only bring the insurance issues before the state courts by affirmatively intervening in the pending liability action or commencing a separate, independent declaratory judgment action in state court."[6] *See id*. As such, whether Canal could become a party to the State Court Litigation plays no role in determining whether the Case and the State Court Litigation are parallel. *See also Little Big Inch*, 496 F. Supp. 2d at 791, 793.

Because Canal is not a party to the State Court Litigation, and Canal's duties under the Policy are not before the state court, not all of the matters in controversy may be litigated in the State Court Litigation. The Court therefore finds that this factor weighs in favor of retaining jurisdiction over the Case. Though this factor is not dispositive in its own right, it "weighs strongly against dismissal." *Sherwin-Williams*, 343 F.3d at 394.

**b. Whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant.**

As the Fifth Circuit explained in *Sherwin-Williams*,

> [t]he filing of every lawsuit requires forum selection. Federal declaratory judgment suits are routinely filed in anticipation of other litigation. The courts use pejorative terms such as 'forum shopping' or 'procedural fencing' to identify a narrower category of federal declaratory judgment lawsuits filed for reasons found improper and abusive, other than selecting a forum or anticipating related litigation. Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'

343 F.3d at 391.

The *Sherwin-Williams* court therefore cautioned regarding "forum shopping" and "anticipatory" litigation that "[t]hese *Trejo* labels cannot be literally applied." *Id*. at 392.

Lopez and the other Defendants have not filed suit against Canal – whether before or after Canal instituted the Case. No evidence indicates that Canal "filed suit 'in anticipation' of a lawsuit to be filed by the declaratory judgment defendant," let alone that Canal did so to "gain access to a federal forum on

[6] The Court does not imply here that the state court would permit Canal to intervene, rather, that Canal's ability to intervene, if any, is of no consequence in the *Trejo* analysis.

improper or unfair grounds." *Id.* at 391. This factor therefore weighs in favor of retaining jurisdiction. *See also Little Big Inch*, 496 F. Supp. 2d at 493-94.

**c. Whether the plaintiff engaged in forum shopping in bringing the suit**

Lopez generally argues that Canal is "attempt[ing] to wrench important fact questions out of the State Court Litigation and into a federal forum." Mot. ¶ 13. Lopez more specifically argues that it was improper forum shopping for Canal to file the Case after the United States District Court for the Eastern District of Tennessee dismissed Canal's similar declaratory judgment action. *Id.* ¶¶ 13-14. Lopez claims that the Case thus represents "an effort to re-litigate an issue that has already been determined." *Id.* ¶ 14. Canal responds that the Tennessee decision is in no way preclusive or otherwise binding on this Court. Resp. ¶ 37. Canal argues that it is not seeking to remove critical fact issues from the State Court Litigation because Canal's obligations to XMEX and the question of whether Decedents were "statutory employees" are not before the state court. *See id.* ¶¶ 28, 38.

The Court agrees with Canal. As explained above, merely "filing a declaratory judgment action in a federal court with jurisdiction to hear it [is not] abusive 'forum shopping.'" *Sherwin-Williams*, 343 F.3d at 391. For instance, *Sherwin-Williams* provides two examples of behavior that would constitute forum shopping: (1) filing a declaratory action in a federal court that would apply different choice of law rules, and hence different substantive law, than the state court; and (2) filing a federal declaratory action while the declaratory defendant was unable to bring a state court action of its own because it had not yet exhausted its state administrative remedies, and thus engaging in a "race to *res judicata*." *Id.* at 399. Lopez does not argue that either of those reasons, or any other cognizably improper motive, underlies Canal's choice to pursue a federal declaratory action.

Indeed, Canal did not engage in either type of abusive forum shopping described in *Sherwin-Williams*. First, there is no evidence that Canal brought the Case in search of more favorable law. *See id.* at 399. In any event, because federal courts sitting in diversity apply the choice of law rules of the state in which they sit, this Court and the Texas court conducting the State Court Litigation would apply the same

law. *See Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 497 (1941); *St. Paul Mercury Ins. Co. v. Lexington Ins. Co*., 78 F.3d 202, 205 (5th Cir. 1996). Second, there is no evidence that any of the Defendants were temporarily procedurally restricted from filing state court actions against Canal, thereby obviating the possibility that Canal filed the Case in an attempt to win "a race to *res judicata*." *See Sherwin-Williams*, 343 F.3d at 399 (quotation marks and citation omitted). Rather, obtaining an early determination as to whether it must defend and indemnify the Alleged Insureds will allow Canal to "minimize the danger of avoidable loss and the unnecessary accrual of damages." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 219 n.11 (5th Cir. 1998) (citation omitted). Canal thus filed the Case in accordance with the "purpose of declaratory judgment actions, which is to resolve outstanding controversies without forcing a putative defendant to wait to see if it will be subjected to suit." *Sherwin-Williams*, 343 F.3d. at 398 n.8.

Lopez's argument that the Court should pay heed to the dismissal of the Tennessee action is well taken, and the Court further discusses it below. However, it is inapposite to the question of whether Canal is "forum shopping," as the forum shopping analysis set forth in *Sherwin-Williams* and other cases applying the *Trejo* factors concerns the choice of forum between the federal court hearing the declaratory action and the state court hearing the underlying action. *See generally Sherwin-Williams*, 343 F.3d at 397-400. The *Trejo* analysis is premised on the notion that a highly related case is before a state court, such that if the declaratory plaintiff is engaged in forum shopping, the court can dismiss the case in favor of the state action. *See id*. Thus, filing a declaratory action in one federal court after a different federal court dismissed a very similar action does not implicate *Trejo's* "forum shopping" concern.

Lopez has not demonstrated that Canal engaged in improper forum shopping by filing the Case. This factor therefore favors retaining jurisdiction.

**d. Whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist**

Lopez argues that by filing the Case years after the State Court Litigation began, Canal is "misus[ing] [] the Declaratory Judgment Act, which is intended to afford one threatened with liability an *early* adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued." Mot. ¶ 16 (quotation marks and citation omitted). Lopez further argues that factual findings in the case may be *res judicata* as to shared factual questions in the State Court Litigation, which would be inequitable. *Id*. at ¶¶ 16-17. Canal responds that it sought declaratory relief "once the coverage issues became apparent" in the State Court Litigation, and that the Case concerns only whether Canal has a duty to defend and indemnify various Defendants (and thus, apparently, that findings in the Case would not be *res judicata* as to liability issues in the State Court Litigation).[7] Resp. ¶¶ 41, 43. Lopez replies that findings in the Case might indeed "collaterally estop important determinations in the State Court Litigation." Reply ¶¶ 8-9.

As an initial matter, Lopez has not explained why Canal's purported delay in filing the Case renders it inequitable for the Court to retain jurisdiction, so the Court finds this argument unavailing. Beyond that, Lopez is correct that for the Court to determine whether Canal has a duty to indemnify, it would have to address many of the factual questions at issue in the State Court Litigation. However, as explained below, Lopez's *res judicata* concern is mooted by the fact that the Court may not rule upon the duty to indemnify until the State Court Litigation is over.

Because this is a diversity case, the Court applies state substantive law. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). As noted, the Court must apply Texas's choice of law rules. *See Klaxon*, 313 U.S. at 497; *St. Paul*, 78 F.3d at 205. Under those rules, the Court might be required to apply the law of either Texas or

---

[7] In an apparent misunderstanding of Lopez's argument, Canal irrelevantly argues at length that factual findings in the State Court Litigation are not *res judicata* as to the Case. *See* Resp. ¶¶ 14-23.

Tennessee.[8] As set out below, Texas law and Tennessee law prescribe closely analogous – and for present purposes, indistinguishable – formulas for adjudicating declaratory judgment actions concerning coverage under liability insurance policies.

Under Texas law, the duties of an insurer to indemnify and to defend are distinct and are to be decided separately. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co*., 300 S.W.3d 740, 743 (Tex. 2009)). Courts use the "eight-corners rule" to determine whether an insurer has a duty to defend its insured in the underlying liability proceedings. *ACE Am. Ins. Co. v. Freeport Welding and Fabricating, Inc.*, 699 F.3d 832, 839-840 (5th Cir. 2011). That rule requires the court to assume that the plaintiff's allegations in the underlying pleadings are true and determine whether such facts fall within the scope of the insurance policy. *Id.* at 840. If the pleadings only allege facts excluded by the policy, there is no duty to defend. *Id.* However, "an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy. *Id.* (citing *Colony Ins. Co. v. Peachtree Constr. Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011)). Importantly, "[b]ecause the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition, an insurer's duty to defend can be determined at the moment the petition is filed." *Id.* (citing *Colony Ins. Co.*, 647 F.3d at 253). By contrast, the duty to indemnify is determined by the facts establishing liability in the underlying litigation. *Id.* at

[8] For the purposes of the Scheduling Order, ECF No. 49, the Court assumed that Texas law would apply to its interpretation of the Policy. The Court now notes *sua sponte* that Texas courts might instead interpret the Policy in accordance with Tennessee law.

Under Texas's choice of law rules, if a contract does not contain an express choice of law provision, and if no statute directs courts to apply the law of a particular state, the court must determine which state has the most significant relationship to the issue presented for determination. *See Reddy Ice Corp. v. Travelers Ins. Co.*, 145 S.W.3d 337, 340 (Tex. App. 2004) (citations omitted). Here, there does not appear to be an express choice of law provision in the Policy, nor a statute which directs the Court to apply the law of a particular state. If so, the "most significant relationship" test might dictate applying Tennessee law. The parties have not yet briefed the choice of law issue. Accordingly, it would be premature to conduct a more thorough choice of law analysis at this time.

844. Therefore, the duty to indemnify ordinarily "cannot be determined until the underlying lawsuit has been resolved." *Id.* "[T]he question whether [Insurer] owes a duty to indemnify is not ripe until the underlying tort suits conclude." *Cont'l Ins. Co. v. Gifford-Hill & Co.*, No. 3:12-CV-0925-D, 2013 WL 1875930, at *2 (N.D. Tex. May 6, 2013).

Similarly, under Tennessee law, "whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. Accordingly, the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." *Travelers Indem. Co. of Am. v. Moore & Assoc*., 216 S.W.3d 302, 305 (Tenn. 2007) (citations omitted) "The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact." *Id*. Thus, the duty to defend "is to be determined *solely* by the allegations contained in the complaint." *Interstate Packaging Co. v. Century Indem. Co*., No. 3:11-cv-00589, 2013 WL 1335120, at *4 (M.D. Tenn. 2013) (citation omitted). "An insurer may not properly refuse to defend an action against its insured unless it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *JNJ Logistics, L.L.C. v. Scottsdale Ins. Co*., No. 2:10-cv-02741-JPM, 2013 WL 6903937, at *7 (W.D. Tenn. Dec. 31, 2013) (citation omitted). By contrast, courts have held that the duty to indemnify "must await resolution of the underlying lawsuit." *Auto Owners Ins. Co. v. Harrell's Fertilizer, Inc*., No. 4:05-CV-39, 2006 WL 156742, at * 4 (E.D. Tenn. Jan 20, 2006); *see also Topmost Chem. & Paper Corp. v. Nationwide Ins. Co*., No. 01-2588V, 2002 WL 1477880, at * 7 (W.D. Tenn. Apr. 23, 2002) ("Before the case is resolved, declaratory relief as to indemnity is premature.").

Thus, under both Texas and Tennessee law, the Court may at this time rule on the duty to defend, based only on the allegations in the state court pleadings and the language of the Policy, but may not rule

on the duty to indemnify until the State Court Litigation has concluded.[9] As discussed, the Case and the State Court Litigation are not parallel, and Canal's duty to defend is not before the State Court. Thus, this Court's interpretation of the Policy as it pertains to the duty to defend would have no bearing on the State Court Litigation. *See Day*, 162 F. App'x at 321 ("because there was no parallel state court proceeding involving the same issue, [plaintiff] did not inequitably gain precedence in time or change a previously selected forum for the declaration it sought."); *Nautilus Ins. Co. v. Vanguard Ins. Co*., 899 F. Supp. 2d 538, 550-51 (N.D. Tex. 2012) (denying request to abate declaratory judgment action because "this court's ruling as to [insurer]'s obligations has no direct bearing on the underlying state case."). Accordingly, insofar as the Court may rule only on the duty to defend until such time as the State Court Litigation proceeds to final judgment, this Court's findings will not estop any determinations by the State Court. Besides the concern of *res judicata*, Lopez has not identified any possible inequity that would result from allowing the Case to proceed. *See Little Big Inch*, 496 F. Supp. 2d at 794. The Court therefore finds that this factor weighs in favor of retaining jurisdiction.

**e. Whether the federal court is a convenient forum for the parties and witnesses**

The federal and state courthouses in El Paso are mere blocks apart, and neither party argues that proceeding in federal court would be more or less convenient for any participant in the Case. The Court therefore finds that this factor is neutral.

**f. Whether retaining the lawsuit would serve the purposes of judicial economy.**

As with the Court's discussion of the fourth *Trejo* factor, the Court may at this time rule upon Canal's duty to defend, which is not at issue in the State Court Litigation. Briefing and ruling upon that

[9] Under both Texas and Tennessee law, there is one noteworthy exception to the general rule that the duty to indemnify cannot be determined until the underlying lawsuit is resolved: if a court finds that there is no duty to defend, it may also determine at that time that there is no duty to indemnify. "Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (citation omitted) (applying Texas law). "[I]f no duty to defend arises out of the . . . [p]olic[y], it necessarily follows that no duty to indemnify arises either." *Interstate Packaging*, 2012 WL 874676, at *7 (applying Tennessee law) (citations omitted).

issue will therefore not lead to duplicative work by the parties, the Court, or the state court.[10] By contrast, the Court may not rule upon the duty to indemnify until the State Court Litigation concludes. At that time, the record from the State Court Litigation will be fully developed, thereby reducing the likelihood that this Court will be required to undertake duplicative efforts to adjudicate the duty to indemnify. However, for the same reasons, the Court can identify no efficiencies that would result from retaining jurisdiction; doing so will not relieve the state court of any of its burden. The Court therefore finds that retaining jurisdiction would neither serve nor harm the purposes of judicial economy, so this factor is neutral.

**g. Whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.**

Lopez argues that although the state court "has not entered a final judgment in the State Court Litigation . . . . [it] will continue to issue any number of pre-trial orders that affect the same parties and the same fact issues" in the Case. Mot. ¶ 22. Canal argues that because it is not a party to the State Court Litigation this factor does not favor abstaining. Resp. ¶¶ 47-48.

The Court agrees with Canal. Canal is not a party to the State Court Litigation, the Case is not parallel to the State Court Litigation, and Lopez merely speculates that the Court might be required to construe a state court decree. This factor therefore weighs in favor of retaining jurisdiction.

**2. Other factors**

The Court may at its discretion consider reasons to retain or decline jurisdiction beyond the *Trejo* factors. *See Sherwin-Williams*, 343 F.3d at 390. The parties' briefs raise two such reasons, which the Court now considers.

---

[10] The parties do not state whether Canal is providing any or all of the Alleged Insureds a defense in the State Court Litigation under a reservation of rights. As the "State Court Litigation is just a few months away from trial after literally years of discovery and procedural wrangling," it is not clear to the Court what the practical effect of a ruling only on the duty to defend would be at this stage of the litigation. *See* Mot. ¶ 20.

First, Canal alleges that one of the questions the Court must address to adjudicate the Case – namely, whether Decedents were "statutory employees" under a federal regulation, 49 C.F.R. § 390.5, and thus subject to the Policy's "employee exclusion" – is a federal question that will not be resolved in the State Court Litigation. *See* Resp. ¶¶ 1-13. Canal argues that the presence of this federal question weighs in favor of retaining jurisdiction. Although the presence of a federal question in the declaratory action is not one of the *Trejo* factors, it is proper for the Court to consider in its abstention analysis the presence of federal questions and various circumstances attendant to such questions. *See Sherwin-Williams*, 343 F.3d at 395-96. However, as all the *Trejo* factors are either neutral or weigh in favor of retaining jurisdiction, the Court need not consider this additional, cumulative reason to retain jurisdiction.

Finally, Lopez generally argues that the Court should defer to the Tennessee court's discretionary dismissal of Canal's previous declaratory action, whether because the Case is a "flagrant attempt to relitigate this holding" or for vaguer equitable reasons. *See* Mot. 3-4, Reply ¶ 10; *Canal v. XMEX*, 2013 WL 663742. The Court has carefully reviewed the Tennessee court's thoughtful opinion and rejects Lopez's argument for four reasons.

First, as Lopez acknowledges, the Tennessee decision is neither binding nor preclusive, and it is based upon Sixth Circuit law. *See* Mot. ¶¶ 6-7, Reply ¶ 10. It is, of course, potentially persuasive, but Lopez fails to demonstrate that the Court should give any special deference to its conclusions.

Second, this Court's finding that it must bifurcate the duty to defend and duty to indemnify analyses and may not rule on the duty to indemnify until the State Court Litigation is concluded resolves many of the Tennessee court's concerns. *See* Section II.B.1.d.; *Canal v. XMEX*, 2013 WL 663742, at *2-5.

Third, the Tennessee court found that "this matter can also be efficiently resolved in the underlying Texas court action." *Canal v. XMEX*, 2013 WL 663742, at *4. As described above, the Court finds that the issues raised in the Case cannot be resolved in the State Court Litigation because Canal is

not a party to the State Court Litigation. Moreover, Lopez has not demonstrated that Canal could participate in that litigation if it so desired.

Fourth, along related lines, the fact that the Case and the State Court Litigation are not parallel is an important factor under Fifth Circuit precedent. *See Sherwin-Williams*, 343 F.3d at 392-94. There is no closely analogous factor in the Sixth Circuit's test. *See Grand Trunk W.R.R. v. Consol. Rail Corp*., 746 F.2d 323, 326 (6th Cir. 1984); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). As discussed in Section II.B.1.a., the possibility that Canal might be able to obtain a resolution of its claims in the State Court Litigation does not change the fact that the cases are not parallel, and that there is thus no pending state action in which all of the matters in controversy may be fully litigated.

In light of the foregoing, the Court finds that the Tennessee decision does not weigh in favor of or against retaining jurisdiction.

**3. Analyzing the application of the *Trejo* and other factors in light of the overarching *Brillhart* principles**

The first, second, third, fourth, and seventh *Trejo* factors weigh in favor of retaining jurisdiction, and the fifth and sixth *Trejo* factors are neutral. The Court therefore finds that the *Trejo* analysis strongly favors retaining jurisdiction. As explained above, the parties' other arguments do not warrant any modification of that conclusion.

The Court must finally consider the results of the *Trejo* analysis in light of the overarching *Brillhart* principles of federalism, fairness, and efficiency. *See Sherwin-Williams* 343 F.3d at 390-91. The Court finds that retaining jurisdiction comports with each of those principles. Specifically, the Court's discussion of the first and seventh *Trejo* factors demonstrates why retaining jurisdiction is in keeping with the principle of federalism. *See also Sherwin-Williams*, 343 F.3d at 391-92. The Court's discussion of the second, third, and fourth *Trejo* factors demonstrates why retaining jurisdiction presents no fairness concerns. *See id*. The Court's discussion of the fifth and sixth *Trejo* factors demonstrates why retaining jurisdiction presents no efficiency concerns. *See id*.

## III. CONCLUSION

For the foregoing reasons, Defendant Jessica Lopez's Motion to Dismiss or Abate Plaintiff's Suit for Declaratory Judgment, ECF No. 43, is **DENIED.** As set forth in the Scheduling Order, ECF No. 49, the Court **ORDERS** the parties to submit motions for summary judgment as to the duty to defend within thirty days of the entry of this Order.

**SO ORDERED.**

SIGNED this 4th day of March, 2014.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE