## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **CANAL INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-156-KC** |
| | § | |
| **XMEX TRANSPORT, LLC, et al.,** | § | |
| | § | |
| **Defendants**. | § | |

## <u>ORDER</u>

On this day, the Court considered the above-captioned case (the "Case"). The Case is a declaratory judgment action concerning an insurer's duties under a liability insurance policy. Five parties to the Case have filed cross-motions for summary judgment (collectively the "Motions"). Two of the Motions are substantive: Defendant Jessica Lopez's Motion for Summary Judgment Regarding Plaintiff Canal's Duty to Defend (the "Lopez Motion"), ECF No. 57, and the Motion for Summary Judgment of Canal Insurance Company on the Duty to Defend (the "Canal Motion"), ECF No. 59. The other three moving parties have adopted the Lopez Motion by reference, and one of those parties seeks relief beyond that requested by Lopez. At issue in the Motions is whether Canal had a duty to provide a defense to certain alleged insureds in liability litigation in Texas state court concerning a fatal truck accident. All five moving parties have filed a number of responses, replies, and supplemental briefs regarding the Motions.[1] The Court need rule upon three of the Motions to dispose of the instant controversy:

---

[1] Canal filed in conjunction with the Canal Motion a list of Proposed Undisputed Facts ("Canal Proposed Facts"), ECF No. 59-1. Lopez also filed a list of Proposed Undisputed Facts ("Lopez Proposed Facts"), ECF No. 61. Canal

For the reasons set forth herein, the Lopez Motion is **GRANTED**, the Trailer Defendants'

Motion is **DENIED**, and the Canal Motion is **DENIED**.

## I.    BACKGROUND

### A.    Factual and Procedural History

Unless otherwise noted, the following facts are undisputed:

On August 17, 2010, Lorenzo Munoz ("Munoz") and Roger Franceware ("Franceware")

were traveling eastbound on Interstate 20 in Mitchell County, Texas, in a 2007 International

truck bearing Vehicle Identification Number 2HSCNSCR57C432781 (the "Truck"). Canal

Proposed Facts ¶ 2; Lopez Resp. to Proposed Facts ¶ 2; Crash Report, ECF No. 59-2 at 71-73.[2]

The Truck was towing a trailer (the "Trailer"). Crash Report 73. The parties dispute whether

Munoz or Franceware was driving.[3] *See* Munoz Pls.' Am. Pet. of Mar. 10, 2014 ("Munoz Live

---

filed a response to the Lopez Motion ("Canal Response"), ECF No. 64, as well as a response to the Lopez Proposed Facts ("Canal Response to Proposed Facts"), ECF No. 63. Lopez filed a response to the Canal Motion ("Lopez Response"), ECF No. 66, as well as a response to the Canal Proposed Facts ("Lopez Response to Canal Proposed Facts"), ECF No. 66-2. Canal filed a reply to the Lopez Response ("Reply to Lopez"), ECF No. 68. Lopez did not file a reply in support of the Lopez Motion.

Defendant Rosa Franceware adopted by reference the Lopez Motion. *See* ECF No. 65.  She has not otherwise briefed the Motions.

Defendants A-Z Trailers, Inc., Dykes & Dykes Trailers, Inc., Goal Transports, Inc., and Jose M. Gomez (collectively "Trailer Defendants") also adopted by reference the Lopez Motion ("Trailer Defendants' Motion"), ECF No. 58. The Trailer Defendants filed their own response to the Canal Motion ("Trailer Defendants' Response"), ECF No. 69, to which Canal filed a reply ("Reply to Trailer Defendants"), ECF No. 71.

Defendants Lorena Munoz and Virginia Munoz (collectively "Munoz Defendants") filed their own response to the Canal Motion ("Munoz Response"), ECF No. 67, to which Canal filed a reply ("Reply to Munoz"), ECF No. 70.

[2] The Court's citations to documents filed in the Case refer to the page numbers superimposed upon them by the ECF system.

[3] Lopez, the Munoz Defendants, and Rosa Franceware filed multiple petitions in the State Court Litigation. *See* ECF No. 1-1 through 1-9; ECF No. 57-1. None of the parties argue that Canal's duty to defend changed over time as the parties amended their pleadings. Accordingly, the Court refers to the allegations in each party's last-filed petition, that is, their live pleading. *See Atl. Cas. Ins. Co. v. Ramirez*, 651 F. Supp. 2d 686, 697 n.2 (N.D. Tex. 2009).

Petition"), ECF No. 57-1 at 4;  Pls.' Fifth Am. Pet. ("Lopez Live Petition"), ECF No. 51-1 at 5;

First Am. Plea in Intervention ("Franceware Live Petition"), ECF No. 50 at 9. The Truck left the

highway, crashed, and caught fire, killing both Munoz and Franceware. Canal Proposed Facts ¶

2; Lopez Resp. to Proposed Facts ¶ 2; Crash Report 73.

Munoz's and Franceware's survivors filed lawsuits in state court in El Paso, Texas

(collectively the "State Court Litigation"), in which they alleged that numerous parties associated

with the Truck or the Trailer were liable for Munoz's and Franceware's personal injuries and

wrongful deaths. *See* Munoz Live Pet. 1-12; Lopez Live Pet. 1-14; Franceware Live Pet. 4-26.

Each decedent's survivors also alleged that the other decedent was among the responsible

parties. See Munoz Live Pet. 6; Lopez Live Pet. 6-7; Franceware Live Pet. 10-11. In brief, the

Munoz Defendants filed one lawsuit, Lopez filed a second lawsuit as administratrix of

Franceware's estate and next friend of two of Franceware's minor children, Franceware's widow

Rosa Franceware intervened in both lawsuits, and the state court consolidated the two lawsuits

for trial. *See* ECF No. 62-1; *Canal Ins. Co. v. XMEX Transp. LLC*, No. 3:12-cv-178, 2013 WL

663742, at *1 (E.D. Tenn. Feb. 25, 2013).

Among the defendants in the State Court Litigation were the Trailer Defendants,

Defendant XMEX Transport, LLC ("XMEX"), Defendant Charles Strader, and non-party Moore

Freight Services, Inc. ("Moore Freight"). The underlying petitions alleged that the Trailer

Defendants have some interest in the Trailer, and that XMEX, Strader, and Moore Freight all

have some interest in the Truck. More specifically, Moore Freight and XMEX are trucking

companies. Moore Freight allegedly owned the Truck. *See* Munoz Live Pet. 3; Franceware Live

Pet. 9. However, Strader allegedly founded XMEX while he was an employee of Moore Freight,

3

and allegedly misappropriated Moore Freight's equipment, including the Truck, to operate XMEX. *See* Munoz Live Pet. at 5-6.

Most of the specific allegations and theories of liability set forth in the State Court Litigation are not pertinent to the Motions. However, for reasons explained below, the parties' allegations concerning the identity of the Truck and the employment status of Munoz and Franceware are crucial to resolving the Motions.

First, the Munoz Defendants alleged that the Truck was a "2007 International" owned by Moore Freight, and that Franceware was driving the Truck in the course and scope of his employment with Moore Freight, XMEX, Strader, or certain of the Trailer Defendants. Munoz Live Pet. 3-4. They additionally alleged alternative theories of liability against various defendants in the case that the jury found that Munoz was driving the Truck. *Id*. at 6. The Munoz Defendants finally alleged that Munoz was not employed by any of the defendants. *Id*. at 4.

Second, Lopez alleged that Munoz was driving the Truck in the course and scope of his employment with Strader, XMEX, or Moore Freight, and that some combination of those parties owned the Truck. Lopez Live Pet. 5-8. Lopez denied that Franceware was acting in the course and scope of his employment with Strader, XMEX, or Moore Freight, but pleaded in the alternative that Franceware was a truck driver employed by Strader, XMEX, or Moore Freight. *Id*. at 6.

Third, Rosa Franceware pleaded that Franceware was "either the driver or passenger of a [] Moore Freight tractor." Franceware Live Pet. 9. She further pleaded in the alternative that Franceware either was or was not acting in the course and scope of his employment with Strader, XMEX, or Moore Freight. *Id*. at 10. She finally pleaded that Munoz was acting in the course and

scope of his employment with one or more of Moore Freight, its principal Dan Moore, Strader, XMEX, or other unspecified defendants. *Id*. at 11.

Thus, to summarize the allegations that are pertinent to the Motions, at least one party to the State Court Litigation alleged that Franceware was acting in the course and scope of his employment with XMEX, and at least one other party alleged that he was not. Similarly, at least one party alleged that Munoz was acting in the course and scope of his employment with XMEX, and at least one other party alleged that he was not. None of the pleadings in the State Court Litigation specifically identified the Truck, for instance, by its VIN or license plate number. The most specific description of the Truck in any of those pleadings was the allegation in the Munoz Live Petition that the Truck was a "2007 International."

On August 6, 2010, Canal issued a liability insurance policy numbered PIA06033700 to XMEX (the "Policy"), ECF No. 1-10. The Policy was in effect at the time of the accident. Policy 1. Several defendants in the State Court Litigation asserted that the Policy obligated Canal to provide them a defense and indemnify them in that litigation. Canal ultimately provided a defense to XMEX and Strader under reservations of rights.[4] Canal Br. on Mootness, ECF No. 75 ¶ 2. Canal refused to provide a defense to the Trailer Defendants and Lopez, in her capacity as the executor of Franceware's estate.[5] Trailer Defs. Br. on Mootness, ECF No. 74 ¶¶ 2, 5; Lopez Br. on Mootness, ECF No. 76 ¶ 6.

---

[4] Canal also provided a defense to Moore Freight under the terms of a separate policy it issued to Moore Freight. *See* Canal Br. on Mootness ¶ 2. That policy is not at issue in the Case.

[5] As Lopez was also a plaintiff in the State Court Litigation, it is not clear what providing a defense to her in her capacity as the executor of Franceware's estate would have entailed. There is no indication that the Munoz Defendants and Rosa Franceware, who were  similarly situated, also demanded a defense.

The State Court Litigation began on October 25, 2010. *See* ECF No. 1 at 5. Eighteen months later, on April 17, 2012, Canal filed a declaratory action against all of the defendants in the State Court Litigation, except Moore Freight, in the United States District Court for the Eastern District of Tennessee. *See* Compl., *Canal Ins. Co. v. XMEX Transp., LLC*, No. 3:12-cv-178-TWP-HBG (E.D. Tenn. Apr. 17, 2012). Canal sought, among other things, declarations that the Policy did not require it to defend or indemnify any parties in the State Court Litigation. *Id*. at 11. That court ultimately dismissed the case pursuant to its discretionary authority under the Declaratory Judgment Act, refused to grant a change of venue to this court, and found that it lacked personal jurisdiction over some of the defendants. *See Canal Ins. Co. v. XMEX Transp., LLC*, No. 3:12-cv-178, 2013 WL 663742, at *5, 8 (E.D. Tenn. Feb. 25, 2013).

Canal then filed the Case on May 7, 2013. *See* Compl. for Declaratory J., ECF No. 1. As in the Tennessee action, Canal seeks declarations that the Policy does not require it to defend or indemnify any of the defendants in the State Court Litigation. *See id*. at 12. Canal again named as defendants all of the parties to the State Court Litigation except Moore Freight. *See id.* at 2-4. However, Canal has not served several of the defendants, and several served defendants have not appeared. *See* Joint Report of Parties Planning Meeting, ECF No. 46 at 1-2. Notably, XMEX and Strader are among those who have not appeared.[6] *See id.* at 1.

The Trailer Defendants moved to join Moore Freight under Federal Rule of Civil Procedure 19(a), or in the alternative to dismiss for failure to join a party under Federal Rule of

---

[6] Canal served XMEX and Strader by certified mail. *See* ECF No. 30; ECF No. 40. Such service is permissible under the Tennessee Rules of Civil Procedure, and hence under the Federal Rules of Civil Procedure as well. *See* Tenn. R. Civ. P. 4.04(10); Fed. R. Civ. P. 4(e)(1). As XMEX was the policyholder, the Court is discomfited by its absence from this litigation. However, the parties have not hesitated and the Court sees no reason not to proceed in XMEX's absence.

Civil Procedure 12(b)(7). *See*, ECF No. 26. The Court denied that motion on October 22, 2013. *See* Order, ECF No. 39.

Lopez then filed a motion requesting that the Court dismiss the Case pursuant to its discretionary authority under the Declaratory Judgment Act, or in the alternative, abate the Case in deference to the State Court Litigation. *See* Mot. to Dismiss, ECF No. 43. While that motion was pending, the Court entered a scheduling order on January 29, 2014. *See* Scheduling Order, ECF No. 49. The Court noted that under Texas law, it would be appropriate to immediately adjudicate the duty to defend on the basis of the Policy and the pleadings in the State Court Litigation, but that it would be inappropriate to adjudicate the duty to indemnify until after the conclusion of the State Court Litigation. *See id*. The Court therefore ordered the parties to file motions for summary judgment concerning the duty to defend within thirty days after it ruled on the pending motion to dismiss. *See id*.

The Court denied the motion to dismiss. *See* March 4, 2014, Order, ECF No. 56. The Court noted in its order that although either Texas law or Tennessee law might ultimately govern its interpretation of the Policy, both states' laws bifurcate the duty to defend and duty to indemnify analyses. *See id*. at 13-16. Mindful of the parties' representation that the State Court Litigation was "just a few months away from trial after literally years of discovery and procedural wrangling," *see id*. at 17 n.10, the Court accordingly reiterated its order for the parties to move for summary judgment as to the duty to defend within thirty days. *See id*. at 20.

The parties then timely filed the Motions. In the course of briefing the Motions, the parties informed the Court that the State Court Litigation had proceeded to a jury verdict.[7] *See*

---

[7] The Court does not address the jury's findings because the parties make no argument that the Court should take those findings into account in adjudicating the duty to defend.

Canal Resp. ¶ 1; Jury Verdict, ECF No. 62-1. The Court then *sua sponte* ordered the parties to brief whether the return of the jury verdict mooted the dispute over the duty to defend. *See* May 12, 2014, Order, ECF No. 72. The parties have filed the requisite supplemental briefs on mootness. *See* Trailer Defs. Br. on Mootness, ECF No. 74; Canal Br. on Mootness, ECF No. 75; Lopez Br. on Mootness, ECF No. 76. All the parties argue that the dispute over the duty to defend is not moot, and the Court agrees.

The Motions are now fully briefed. In sum, Lopez now asks the Court to declare that the Policy obligates Canal to defend XMEX, Strader, and Franceware's estate, and Canal asks the Court to declare that it has no duty to defend those parties. Lopez Mot. ¶ 3; Canal Mot. ¶ 58. Additionally, the Trailer Defendants move for a declaration that Canal is obligated to defend them.[8] *See* ECF No. 58; ECF No. 58-1.

### B.      The Policy

The Policy first describes which vehicles and individuals it covers, and then sets forth a number of exclusions from those baseline coverage provisions.

### 1.      General coverage provisions

Section II.A of the Policy provides that

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto".
> . . . .

---

[8] The filings of the Trailer Defendants are curious, to say the least. The Trailer Defendants adopted the Lopez Motion by reference, *see* ECF No. 58, but the Lopez Motion makes no mention of the Trailer Defendants and does not assert that Canal owes them a duty to defend. However, the Trailer Defendants also filed a proposed order, ECF No. 58-1, by which they clearly request a declaration that Canal has a duty to defend them. The Court finds that the Trailer Defendants have moved for summary judgment as to Canal's duty to defend them. Beyond that, though, the Trailer Defendants make no substantive argument, whether in conjunction with their motion or in their subsequent response to the Canal Motion, as to whether Canal owes them a defense.

> We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply.

Policy 29.

It is undisputed that the claimed damages in the Case resulted from "bodily injury," that the crash in question was an "accident," and that the State Court Litigation is a "suit." Thus, the resolution of the Motions will turn on whether the Truck was a "covered auto" and whether each relevant party was an "insured."

Read together, the "Business Auto Declarations" page of the Policy and the Business Auto Coverage Form define "covered autos" as only "specifically described autos." Policy 23, 28. "Specifically described autos" are defined as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any 'trailers' while attached to any power unit described in Item Three)." *Id.* at 28.

Item Three of the declarations, which sets forth the "specifically described autos" that are covered, lists the Vehicle Identification Numbers of three vehicles. *Id.* at 24. The Truck's VIN is not among those listed. *See id.* Additionally, all three listed vehicles are described as 2005 International trucks, whereas the Truck was a 2007 International. *Id.* The parties therefore agree that, at least with the benefit of hindsight, the Truck was not a specifically described auto. Canal Proposed Facts ¶¶ 5-6; Lopez Response to Proposed Facts ¶¶ 5-6.

Section I.B.2 of the Policy creates an exception to the general rule that only specifically described autos are "covered autos." It provides that for the type of liability coverage in question,

> an "auto" you acquire will be a covered "auto" for that coverage only if:

> a.   We already cover all "autos" that you own for that coverage or if it replaces an "auto" you previously owned that had that coverage; and
>
> b.   You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

Policy 29.

Section I.C.3 of the Policy similarly provides that certain types of vehicles which are not specifically described are nonetheless "covered autos." Pertinently, these include temporary substitute autos, which are defined as "[a]ny 'auto' you do not own while used with the permission of its owner as a temporary substitute for a covered 'auto' you own that is out of service [for various reasons]. A temporary substitute auto does not mean a vehicle that includes a driver." *Id.*

Thus, a "covered auto" under the Policy may either be a specifically listed auto, a replacement auto, or a temporary substitute auto. *Id.* at 23, 28-29.

The Policy defines an "insured," in pertinent part, as

> a)   You for any covered auto.
>
> b)   Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
>> 1)   The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>> …
>
> c)   Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.* at 29-30.

Thus, an "insured" under the Policy includes XMEX (the policyholder) for any "covered auto," anyone using a "covered auto" with XMEX's permission, and anyone else who is liable for the conduct of an insured. *Id.*

### 2.    Exclusions from general coverage provisions

The Policy contains many exclusions from its general coverage provisions. Three of them are pertinent to the Motions: the "Employee Exclusion," the "Fellow Employee Exclusion," and the "Occupant Hazard Exclusion."

First, Section II.B.4. of the Policy provides in pertinent part that coverage does not apply for bodily injury to "[a]n employee of the 'insured' arising out of the and in the course of (1) Employment by the 'insured,'; or (2) Performing the duties related to the conduct of the 'insured's' business." *Id.* at 30.

Second, Section II.B.5 of the Policy provides in pertinent part that coverage does not apply for bodily injury to "[a]ny fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business." *Id.* at 31.

Third, per the "Occupant Hazard Exclusion Endorsement" appended to the Policy, Section II.B.14 of the Policy provides that coverage does not apply for "'Bodily Injury' sustained by any person while in or upon, entering or alighting from the 'auto'." *Id.* at 52.

### 3.    The MCS-90 endorsement

The Policy also includes a federally mandated endorsement known as the MCS-90, by which Canal agreed to pay "any final judgment against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . regardless of whether or not each motor vehicle is specifically described in the policy." *Id.* at 54. "Basically, the MCS–90 makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy." *T.H.E. Ins. Co. v. Larsen Intermodal Servs. Inc.*, 242 F.3d 667, 671 (5th Cir. 2001). The MCS-90

11

is thus "in effect, suretyship by the insurance carrier to protect the public – a safety net . . . [I]t simply covers the public when other coverage is lacking." *Id*. at 672 (quoting *Canal Ins. Co. v. Carolina Cas. Ins. Co.,* 59 F.3d 281, 283 (1st Cir. 1995)).

Various parties extensively debate how the MCS-90 and a related federal regulation should impact the Court's analysis of the Policy's employee exclusion.[9] *See* Canal Mot. ¶¶ 32-55; Lopez Mot. ¶ 20; Canal Resp. ¶¶ 14-17; Lopez Resp. ¶ 13; Munoz Defs. Resp. ¶¶ 27-38; Reply to Munoz ¶¶ 20-23. For reasons explained below, the Court need not delve in to that dispute. As the MCS-90 is thus of no relevance to the Court's resolution of the Motions, it does not further discuss the MCS-90.

## II.    DISCUSSION

### A.    Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[9] Canal repeatedly argues that the MCS-90 does not expand its obligations to any insureds under the Policy. *See* Canal Mot. ¶¶ 24-29; Reply to Trailer Defs. ¶ 22; Reply to Lopez ¶ 20; Reply to Munoz Defs. ¶ 24. However, this argument is academic, as none of the parties claim that the MCS-90 expands the Policy's coverage.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Finally, when evaluating cross-motions for summary judgment, the "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine

issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw

*Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

### B.      Analysis

The parties first dispute whether the general coverage provisions of the Policy, apart from

any exclusions, obligate Canal to provide a defense to any of the alleged insureds. This dispute

encompasses two separate questions: first, whether the allegations in the pleadings raised the

potential that the Truck was a covered auto under the Policy; and second, whether any of the

relevant parties qualify as insureds under the Policy. In the event Canal owes a duty to defend,

the parties also dispute whether the Employee Exclusion, Fellow Employee Exclusion, or

Occupant Hazard Exclusion negate the duty to defend. However, bound up with all these

disputes is a choice of law question: Canal argues that the Court should interpret the Policy in

accordance with Texas law, while Lopez argues that the Court should apply Tennessee law. The

Court first disposes of Canal's argument that various defendants lack standing to request the

relief they seek, then analyzes the choice of law question, and finally addresses the parties' other

disputes in turn.

### 1.      Lopez and the Munoz Defendants have standing to contest Canal's duty to defend

Canal argues for the first time in its Reply to Lopez and Reply to Munoz that those

parties lack standing to contest Canal's duty to defend because they were not insured under the

Policy. Reply to Lopez ¶¶ 1-6; Reply to Munoz ¶¶ 3-6. Canal's grounds for this argument are not

entirely clear, as it cites both Texas case law concerning whether an injured party may sue an

insurer and federal cases concerning Article III standing. The distinction matters because

although "a court generally will not consider arguments raised for the first time in a reply brief,"

*Lombardi v. Bank of Am.*, Civil Action No. 3:13-cv-1464-o, 2014 WL 988541, at *3 (N.D. Tex. Mar. 13, 2014), "[f]ederal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte at any stage of judicial proceedings." *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999) (citation omitted). To the extent Canal's argument relates to Article III standing, it serves to question the Court's subject matter jurisdiction. The Court therefore considers Canal's standing argument and finds it to be meritless.[10]

As an initial matter, Canal filed the Case and chose to name Lopez and Munoz as defendants. As the Court noted in its order denying Lopez's motion to dismiss, the Case presents a justiciable controversy, and Lopez and the Munoz Defendants are proper parties. *See* March 4, 2014, Order 5; *Dairyland Ins. Co. v. Makover*, 654 F.2d 1120, 1123 (5th Cir. 1981) ("In a declaratory judgment action brought by an insurer to determine coverage under a liability policy issued to the insured, third parties claiming liability in state tort suits against the insured have been held to be proper parties to the declaratory suit, even though their claims against the insurer [were] contingent upon recovery of a judgment against the insured."). It appears, then, that although Canal frames its argument in terms of "standing," Canal simply wants the Court to disregard Lopez and the Munoz Defendants' arguments regarding the duty to defend. As XMEX and Strader have not appeared in the Case, and Lopez and the Munoz Defendants have argued the duty to defend more substantively and vigorously than any other parties, the upshot of Canal's argument is that it should win by default because the defendants it chose to sue and seek summary judgment against may not argue to the contrary.

---

[10] Canal's Texas law argument, which the Court need not consider because Canal raised it for the first time in its reply briefs, is similarly unpersuasive. Canal cites a number of cases setting forth the Texas "no direct action" rule, whereby an injured party cannot directly sue the alleged tortfeasor's insurer before the tortfeasor's liability is established, unless the injured party was an intended third party beneficiary of the insurance policy. Reply to Lopez ¶¶ 2-3, 5; Reply to Munoz ¶¶ 4-5 That rule is inapplicable here because Canal, not Lopez or the Munoz Defendants, brought the Case; those parties seek no relief from Canal.

Canal's contention is incorrect. In *Dairyland*, the Fifth Circuit held that injured parties named as defendants in a declaratory action had standing to appeal the district court's decision that the insurer did not owe its putative insured a duty to defend. 654 F.2d at 1123. The court noted that "[a]lthough [the insurer] claims on appeal that the [injured parties'] interest in the declaratory judgment action is not sufficient to grant them standing to appeal, it apparently thought that [their] interest was sufficiently affected to name them as defendants." *Id*. The court explained that "it would be anomalous to hold here that an actual controversy exists between [] the injured party and [] the insurer and yet deny [the injured party] the right to participate in the controversy." *Id*. (quoting *Hawkeye Sec. Ins. Co. v. Graves*, 302 F.2d 174 (7th Cir. 1962)). The Fifth Circuit recently reaffirmed the principle set forth in *Dairyland*, holding that "our precedent is clear that [an injured party] has standing to challenge [an insurer's] claim that it owes no coverage to its insured and has no duty to defend." *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co*., 677 F.3d 250, 257 n.5 (5th Cir. 2012) (citing *Dairyland*, 654 F.2d at 1123).

Here too, Canal properly sued Lopez and the Munoz Defendants, and the Case presents a justiciable controversy. *See* March 4, 2014, Order 5; *Dairyland* 654 F.2d at 1123. Although *Dairyland* and *Looney Ricks Kiss* concerned a party's standing to appeal, courts have applied the reasoning of those cases equally to a party's standing to move for summary judgment or oppose an insurer's motion for summary judgment in the district court. *See, e.g., Commerce & Indus. Ins. Co. v. Alexander*, Civil Action No. H-11-3939, 2012 WL 3046011, at *2-3 (S.D. Tex. July 25, 2012) (insurer's inclusion of injured party as defendant in declaratory action against insured gave injured party standing to bring counterclaim seeking declaration that insurer owed the insured a duty to defend). The Court accordingly concludes that Lopez and the Munoz

16

Defendants may challenge Canal's claim that it has no duty to defend XMEX, Strader, or Franceware's estate.

The cases Canal relies upon do not undermine the Court's conclusion. *Allstate Insurance Co. v. Wayne County*, 760 F.2d 689 (6th Cir. 1985), which Canal cites for the proposition that someone not party to an insurance policy may not assert the insurer's duty to defend the insured, in fact complements *Dairyland* and supports the Court's conclusion. *See* Reply to Lopez ¶¶ 4-5. Canal inexplicably states – twice – that this case applied Tennessee law, *see id.*, when in fact the only state law it referenced was that of Michigan, and the relevant part of its analysis concerned Article III standing. *Wayne County*, 760 F.2d at 694-95. In any event, the Sixth Circuit explained in *Wayne County* that the cases "involving actions among insurers, their insureds and third parties in the declaratory judgment context" lead to the conclusion that

> [w]hile it is clear that the injured party, often the plaintiff in a state court action, has standing to adjudicate the rights of the insured vis-a-vis the insurer, the courts have been reluctant to allow parties who assert no claim against the insured to litigate the insurer's obligations pursuant to the insurance contract.

*Id.* at 695.

*Wayne County* was an example of the latter scenario, because it concerned a dispute between the insured's employer and the insurer as to whether the insurer owed a defense to the insured. *Id.* at 691, 694. By contrast, here Lopez and the Munoz Defendants are injured parties – and plaintiffs in a state court action – who seek to adjudicate the rights of the insured vis-à-vis the insurer. Per *Wayne County*, "it is clear" that they may do so. *See id.* at 695.

The only case Canal cites which is on point is *Canal Insurance Co. v. Cook*, 564 F. Supp. 2d 1322 (M.D. Ala. 2008). In that case, as here, Canal filed a declaratory action against its putative insureds and the injured party. *Id.* at 1324. Both Canal and the injured party moved for summary judgment, but the insureds did not move for summary judgment. *Id.* The court

discussed *Wayne County*, and derived from it that as "a general rule, a person has no standing to assert, under an insurance policy to which he is not a party and thus under which he is not insured, the insurer has a duty to defend the insured." *Id*. at 1326. The court therefore held that chiefly for that reason, the injured party lacked standing to argue that Canal owed the insureds a duty to defend. *Id*. at 1326-27. Thus, *Cook* supports Canal's position.

The Court does not find *Cook* persuasive for two reasons. First, the court in *Cook* appears to have misinterpreted *Wayne County*. *Cook* framed the holding in *Wayne County* as concerning "whether someone uninsured by an insurance policy can assert the insurer's duty to defend its insured." *Id*. at 1326. As explained above, however, *Wayne County's* holding was not so general: it concerned only whether a party which was *not* injured by the insured and was *not* a plaintiff in state court could assert the insured's right to a defense; it confirmed that "it is clear that the injured party, often the plaintiff in a state court action, has standing to adjudicate the rights of the insured vis-a-vis the insurer." *Wayne Cnty.*, 760 F.2d at 695. As the party whose standing was challenged in *Cook* was an injured party who was the plaintiff in state court, *Cook* appears to have misapplied *Wayne County* in holding that such a party lacked standing.

Second, the court in *Cook* did not address the evident paradox in finding, on the one hand, that the injured party was a proper defendant in a declaratory action concerning Canal's duty to defend, and on the other hand, that it lacked standing to argue Canal's duty to defend. 564 F. Supp. 2d at 1326-27. As the Fifth Circuit put it in *Dairyland*, "it would be anomalous to hold here that an actual controversy exists between [] the injured party and [] the insurer and yet deny [the injured party] the right to participate in the controversy." 654 F.2d at 1123 (citation omitted). It was for that reason that *Dairyland* held that an injured party which is otherwise a proper declaratory defendant has standing to appeal a determination that the insurer owed its

insured no duty to defend. *Id.* That *Cook* does not delve into this anomaly in any way detracts from its persuasiveness.

In sum, the Court does not find persuasive Canal's argument that Lopez and the Munoz Defendants lack standing to argue Canal's duty to defend.

### 2.    Choice of law

Because this is a diversity case, the Court applies state substantive law. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Federal courts sitting in diversity apply the choice of law rules of the state in which they sit. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996). The Court therefore applies Texas' choice of law rules to determine which state's substantive law it must use to analyze the Policy.

"Which state's law governs an issue is a question of law for the court to decide." *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)). "Texas courts presume that other states' laws are the same as its own and the party advocating the use of a different state's laws bears the burden of rebutting that presumption." *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013);  *Excess Underwriters at Lloyds, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 (Tex. 2008). If that party does not meet its burden, Texas courts presume that the outcome would be no different under foreign law, and apply Texas law. *See Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 910 (5th Cir. 2012); *Excess Underwriters*, 246 S.W.3d at 53.

If a true conflict of laws exists, Texas uses the "most significant relationship" test to determine which state's law governs the conflict. *Duncan*, 665 S.W.2d at 420-22; *accord Centex*

*Homes v. Lexington Ins. Co.*, No. 3:13-cv-719-BN, 2014 WL 1225501, at *5 (N.D. Tex. Mar. 25, 2014). "[I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Duncan*, 665 S.W.2d at 421. *See also Hughes Wood Prods.*, 18 S.W.3d at 205 (stressing that courts are to consider the states' relationship with the particular substantive issue, not their relationship with the case as a whole).

As relevant here, courts use the "most significant relationship to the particular substantive issue" analysis when there is an actual conflict of law concerning which state's law should be used to interpret an insurance policy. *See Reddy Ice Corp. v. Travelers Ins. Co.*, 145 S.W.3d 337, 340 (Tex. App. 2004) (citing *Maxus Exploration Co. v. Moran Bros., Inc*., 817 S.W.2d 50, 53 (Tex. 1991)); Restatement (Second) of Conflicts of Laws §§ 6, 8 (1971)) (when "a contract does not contain an express choice of law provision, . . . . [and] absent a statutory directive, a court must [] ascertain which state has the most significant relationship to the issue presented for determination").

The fact that two states' laws are not identical is insufficient alone to establish a true conflict: "Without relevant differences in the substantive laws, the court need not undertake a choice of law analysis." *Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 846 (N.D.Tex 2011); *see also Playboy Enters.*, 519 F. App'x at 225.  Indeed, "[i]f the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice-of-law question." *Playboy Enters.*, 519 F. App'x at 225; *Ally Fin., Inc. v. Gutierrez*, No. 13-CV-108, 2014 WL 261038, at *6 (Tex. App. Jan. 23, 2014).

Here, the Policy contains no express choice of law provision so the Court must therefore determine whether Texas or Tennessee law governs interpretation of the policy. *Reddy Ice*, 145

S.W.3d at 340. Before engaging in a choice-of-law analysis, however, the Court must first determine if there is a true conflict between Texas and Tennessee law. *See Flagship Credit*, 481 F. App'x at 910 (holding that courts "should not [] engage[] in [choice-of-law] analysis until first finding a true conflict"). Lopez, as the party moving for the application of Tennessee law, has the burden of showing that such a conflict exists. *Playboy Enters.*, 519 F. App'x at 225; *Excess Underwriters*, 246 S.W.3d at 53.  If the Court finds that Lopez has failed to show that Tennessee law would require a different result from Texas law in this case, the Court will presume that the law of both states is the same and apply Texas law. *Flagship Credit*, 481 F. App'x at 910; *Excess Underwriters*, 246 S.W.3d at 53.

### a.    The "Eight-Corners Rule" in Texas and Tennessee law

Lopez argues that although Texas and Tennessee law both require courts to examine only the underlying pleadings and the insurance policy to adjudicate the duty to defend, "their laws are not identical" because Texas permits the use of extrinsic evidence under some circumstances while Tennessee does not. Lopez Mot. ¶ 6; Lopez Resp. ¶¶ 3-8. To the extent this difference exists, it could be material because Canal seeks to use the fact that the truck referred to in the pleadings was not among the vehicles listed on the Policy to prove that it has no duty to defend – a fact which it can demonstrate only by reference to evidence extrinsic to the pleadings and the Policy.

As the Court explained in its order denying Canal's motion to dismiss, Texas and Tennessee prescribe similar formulas for adjudicating liability insurers' duty to defend. March 4, 2014, Order 14-15. These formulas are variously referred to as the "eight-corners rule," "four-corners rule," or "complaint allegation rule." *See id.* For the sake of clarity, the Court uses only the term "eight-corners rule."

Under Texas law, courts use the "eight-corners rule" to determine whether an insurer has a duty to defend its insured in the underlying liability proceedings. *See, e.g.*, *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,* 699 F.3d 832, 839-40 (5th Cir. 2012). That rule requires the court to assume that the plaintiff's allegations in the underlying pleadings are true and determine whether such facts fall within the scope of the insurance policy. *Id.* at 840. If the pleadings only allege facts excluded by the policy, there is no duty to defend. *Id.* However, "an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy. *Id.* (citing *Colony Ins. Co. v. Peachtree Constr. Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011)). "Because the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition, an insurer's duty to defend can be determined at the moment the petition is filed." *Id.* (citing *Colony Ins. Co.*, 647 F.3d at 253).

Similarly, under Tennessee law, "whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. Accordingly, the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305 (Tenn. 2007) (citations omitted). "The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact." *Id.* Thus, the duty to defend "is to be determined *solely* by the allegations contained in the complaint." *Interstate Packaging Co. v. Century Indem. Co.*, No. 3:11-cv-00589, 2013 WL 1335120, at *4 (M.D. Tenn. Mar. 29, 2013) (citing *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994)). "An insurer may not properly refuse to defend an action against its insured unless it is

plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *JNJ Logistics, L.L.C. v. Scottsdale Ins. Co*., No. 2:10-cv-02741-JPM, 2013 WL 6903937, at *7 (W.D. Tenn. Dec. 31, 2013) (citing *Tenn. Farmers Mut. Ins. Co. v. Cherry,* W2007–00342COAR3CV, 2008 WL 933479, at *5 (Tenn. App. Ct. Apr. 7, 2008)).

Therefore, the Texas and Tennessee eight-corners rules appear to be identical, in that they both require courts to adjudicate the duty to defend based only on the language of the insurance policy and the allegations in the underlying litigation. However, a series of decisions from the Fifth Circuit, buttressed by supportive dicta from the Texas Supreme Court, indicates that Texas law allows exceptions to the "eight-corners rule," such that under some circumstances, a court may consider extrinsic evidence when adjudicating the duty to defend. *See Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 F. App'x 366, 371 n.4 (5th Cir. 2014); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308-11 (Tex. 2006).

In *Northfield Insurance Co. v. Loving Home Care, Inc*., the Fifth Circuit made an "Erie guess" that if the Texas Supreme Court were to recognize an exception to the eight-corners rule, such exception would apply only in cases where "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." 363 F.3d 523, 531 (5th Cir. 2004). The Texas Supreme Court endorsed that view in *GuideOne Elite Insurance Co. v. Fielder Rd. Baptist Church*, though it held that no exception was warranted in that case. 197 S.W.3d 305.  The Fifth Circuit subsequently relied on *Northfield* and *GuideOne* in applying the exception and considering extrinsic evidence meeting the conditions set forth in *Northfield*. *See OOIDA Risk Retention*

*Grp., Inc. v. Williams*, 579 F.3d 469, 476 (5th Cir. 2009). Since then, a number of Texas

intermediate appellate courts have applied the exception, and others have acknowledged the

exception but declined to apply it on the facts presented. *See, e.g.*, *Weingarten Realty Mgmt. Co.*

*v. Liberty Mut. Fire Ins. Co*., 343 S.W.3d 859, 862-69 (Tex. App. 2011) (collecting cases and

applying the exception). The Fifth Circuit recently reaffirmed that although the Texas Supreme

Court has not definitively held that extrinsic evidence may be used, "*this court* has endorsed the

exception." *Star-Tex*, 553 F. App'x at 371 n.4. The Court accordingly understands that Texas

law, as interpreted by the Fifth Circuit, allows the consideration of extrinsic evidence regarding

the duty to defend "when it is initially impossible to discern whether coverage is potentially

implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which

does not overlap with the merits of or engage the truth or falsity of any facts alleged in the

underlying case." *Id.* at 372.

By contrast, Tennessee law does not appear to allow any exceptions to its eight-corners

rule. In *Interstate Packaging*, the court noted the existence of two cases which did appear to

countenance such an exception, one of them from 1964 and the other an unpublished opinion

from an intermediate appellate court in 1990. 2013 WL 1335120, at *4.  The court found these to

be "not particularly persuasive" because "the Tennessee Supreme Court has more recently,

repeatedly, and clearly, stated the rule that the duty to defend is to be determined *solely* by the

allegations contained in the complaint." *Id.* (citing *Torpoco*, 879 S.W.2d at 835; *Moore*, 216

S.W.3d at 305; *Clark v. Sputnik's, LLC*, 368 S.W.3d 431, 439 (Tenn. 2012)) (citations omitted).

The Court agrees that Tennessee law does not allow the consideration of extrinsic evidence in

the duty to defend analysis, and therefore finds that the Texas and Tennessee approaches to the

eight-corners rule differ only in that Texas law recognizes an exception to the eight-corners rule in limited circumstances.

As mentioned earlier, Lopez, as the party advocating the application of Tennessee law, has the burden of establishing the initial conflict of law. *See Playboy Enters.*, 519 F. App'x at 225; *Excess Underwriters*, 246 S.W.3d at 53. If the Court finds that the extrinsic evidence exception is not applicable, then the underlying eight-corners analysis would be identical under both Texas and Tennessee law and there would not be a true conflict. *See Chartis*, 930 F. Supp. 2d at 665 (no conflict where potential exception to rule under Texas law did not apply and state laws otherwise identical). Therefore, the critical issue in determining whether Lopez has met her burden is whether the Texas exception allowing extrinsic evidence under the eight-corners rule is applicable in the Case. *See Playboy Enters.*, 519 F. App'x at 225; s*ee also Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F.Supp.2d 653, 665 (W.D. Tex. 2013) (finding no conflict where potential exception to rule under Texas law did not apply and state laws were otherwise identical).

> **b.** **The eight-corners analysis of the duty to defend is the same under both Texas and Tennessee law**

Lopez believes the Texas exception results in a conflict because it may permit the Court to (1) consider Canal's proposed extrinsic evidence showing that the VIN number of the Truck was not specifically listed under the Policy and (2) look to extrinsic evidence to establish Munoz's and Franceware's employment status in relation to the defendants. Lopez Resp. ¶¶3-7; Lopez Mot. ¶19. The Court addresses each of these in turn.

Canal argues that "[if] the vehicle in the accident was not a specifically listed vehicle under the Canal Policy, no duty to defend either Xmex or Strader or Franceware exists." Canal

Mot. ¶ 11, 18.  In support of this argument Canal offers an accident report showing that the VIN number of the Truck was not specifically listed under the Policy. Canal Mot. ¶ 11. This evidence, however, in no way affects the Court's initial eight-corners analysis under Texas law.

As explained above, in addition to providing coverage for vehicles with VIN numbers specifically listed on Item Three, the Policy also provides coverage for "[a]ny 'auto' you do not own while used with the permission of its owner as a temporary substitute for a covered 'auto' you own that is out of service." Policy 24, 28-29.  Therefore, Canal's duty to defend can arise under the temporary substitute provision regardless of whether the Truck was specifically listed in Item Three.  While the extrinsic VIN number evidence may undermine coverage based upon the specifically described autos provision in the Policy, it has nothing to do with the temporary substitute vehicle coverage which is not dependent on the VIN numbers of the trucks.  Therefore, as discussed below, the Court agrees with Lopez that "[e]ven if the tractor was unlisted, [the] pleadings raise the fair inference that XMEX and Franceware were using the tractor with Moore Freight's permission, making the tractor a potentially covered auto under Section [I.C.3] of the Policy." Lopez Resp. ¶ 12; Policy 29. Accordingly, the Court finds it is initially possible to discern that coverage is potentially implicated by the underlying pleadings and Texas law does not permit the Court to consider Canal's extrinsic accident report in its eight-corners analysis. *See Star-Tex*, 553 F. App'x at 371.

The Court further finds that Texas law would not permit extrinsic evidence on the issue of Munoz's and Franceware's employment status.  Courts may consider extrinsic evidence under the Texas eight-corners exception only when it "does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id.* at 372.  The underlying pleadings clearly alleged that neither Munoz nor Franceware was employed by any of the

26

defendants. *See* Munoz Live Pet. 4; Lopez Live Pet. 6; Franceware Live Pet. 10.  Accordingly, any extrinsic evidence offered to prove otherwise would engage the truth or falsity of the allegations in the underlying pleadings and would not be permissible under Texas law. *See Star-Tex*, 553 F. App'x at 372.

Because the Court has found that the Texas exception is not relevant, both Texas and Tennessee law would apply identical eight-corners analyses to the Case.  Accordingly, the result would be the same under the laws of either jurisdiction and there is no need to resolve the choice-of-law question. *See Playboy Enters.*, 519 F. App'x at 225; *Chartis*, 930 F.Supp.2d at 665. The Court finds that Lopez has failed to meet her burden of establishing a true conflict, presumes that Texas and Tennessee law are the same, and applies Texas law to determine if a duty to defend exists under the insurance policy. *See Flagship Credit*, 481 F. App'x at 910; *Excess Underwriters*, 246 S.W.3d at 53.

### 3.    Canal has a duty to defend under the Policy

As noted above, the parties dispute whether the pleadings in the State Court Litigation triggered Canal's duty to defend.  Issues regarding an insurer's duty to defend are matters of law and may be resolved by summary judgment when there are no genuine issues as to any material fact. *Star-Tex*, 553 F. App'x at 369. The interpretation of insurance contracts is governed by the same rules of construction used to interpret other contracts. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). "Words in the policies, if not defined, are accorded their plain and ordinary meaning." *Tex. Molecular Ltd. P'ship v. Am. Specialty Ins. Co.*, 424 F. App'x 354, 356 (5th Cir. 2011). Any ambiguities in the insurance policy are interpreted in favor of coverage. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

As the Court noted with regard to the choice of law issue, "an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *Freeport Welding*, 699 F.3d at 839-40.  The only documents relevant to this inquiry are the Policy and the underlying petitions. *Id.* "If there is doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *PPI Tech. Servs., L.P. v. Liberty Mut. Ins. Co.*, 515 F. App'x 310, 313-14 (5th Cir. 2013) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).

> **a.      The pleadings allege adequate facts to raise the potential that the auto was a covered temporary substitute vehicle**

The Truck would be a "covered auto" under the Policy if it were specifically listed, or if it were a temporary substitute auto for one of the specifically listed autos. Policy 28-29.

Munoz pleaded that Moore Freight owned the Truck and that it was under the control of Moore Freight, XMEX, and Strader. *See* Munoz Live Pet. 3-4. Franceware similarly pleaded that the Truck belonged to Moore Freight and that Moore Freight, XMEX, Dan Moore, and/or Strader negligently "allow[ed] Defendant Munoz to operate its vehicle." Franceware Live Pet. 9, 12. Lopez, though not directly alleging that Moore Freight owned the vehicle, pleaded that Moore Freight, XMEX, and/or Strader negligently "allow[ed] Defendant Munoz to operate its vehicle," thereby indicating that the Truck was owned or controlled by one of those parties. Lopez Live Pet. 7.

Furthermore, both Lopez and Franceware alleged facts indicating that Munoz was operating the Truck in the course and scope of his employment with XMEX. Lopez Live Pet. 7;

28

Franceware Live Pet. 9, 11. Munoz similarly alleged that Franceware was driving the vehicle in the course and scope of his employment for XMEX. Munoz Live Pet. 3-4.

The Court finds that a reasonable inference arising from those allegations is that XMEX was using the Truck with the permission of its owner Moore Freight as all three pleadings stated facts indicating that Moore Freight potentially owned the vehicle and that either Munoz or Franceware was operating it on behalf of XMEX.[11] This inference in turn raises the *potential* that XMEX borrowed the auto as a covered temporary substitute.

While it is true that none of the three Defendants expressly pleaded that the Truck was being used as a temporary substitute auto, "[w]here the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 n.3 (Tex. 2012). "Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *Id.*; *see also PPI Tech.*, 515 F. App'x at 313-14.

The Court accordingly resolves any doubt in favor of the insured and finds that the pleadings sufficiently alleged facts raising the potential that XMEX was using the Truck with the permission of Moore Freight as a temporary substitute for one of the listed vehicles.

---

[11] Canal argues with citation to several Texas law cases that to find a duty to defend, the Court would have to impermissibly read facts into the pleadings or imagine factual scenarios which might trigger coverage. Canal Reply to Lopez ¶¶ 11-17. Canal is correct that the Court "may not[ ] . . . (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Star-Tex*, 553 F. App'x at 370. Nonetheless, the Court "may draw inferences from the petition that may lead to a finding of coverage" and "must consider 'any reasonable inferences that flow from the facts alleged.'" *Id.* Any inferences drawn in this order reasonably flow from the facts alleged in the pleadings and the Court need not read facts into the pleadings or otherwise look outside them to reach its decision.

In reaching that conclusion, the Court finds highly instructive the Fifth Circuit's decision in *Larsen*. In that case, the Fifth Circuit considered an insurer's duty to defend under Louisiana law, which for present purposes is identical to that duty in Texas:

> [T]he insurer's duty to defend . . . is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
> . . . .
> Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against the insured.

*Larsen*, 242 F.3d at 677 (quoting *Am. Home Assurance Co. v. Czarniecki*, 230 So. 2d 259, 259 (La. 1969).

Larsen, the insured trucking company, had an insurance policy from T.H.E. that provided coverage only for specifically described autos. *Id*. at 670. The policy also provided that newly acquired autos would be covered, but only if Larsen requested coverage within twenty-four hours after acquiring the vehicle. *Id*. A truck Larsen acquired, which was not a specifically described auto, was involved in an accident. *Id*. at 670-71. It was undisputed that Larsen did not inform T.H.E. that it had acquired the truck until after the accident, twenty-two days after it acquired the truck. *Id*. at 671.

The Fifth Circuit held that T.H.E. was required to defend Larsen. *Id*. at 678. The Court explained that

> [t]hough the tractor involved in the accident was not listed in the schedule of covered autos, it nevertheless could have been covered had Larsen requested coverage within twenty-four hours after acquiring it. T.H.E. admits in its brief that once coverage is timely requested, coverage attaches immediately, but an invoice reflecting the new premium is issued some time within the following thirty days. The record also indicates that a final endorsement showing coverage for the new vehicle could be issued by T.H.E. four to five months after coverage was requested. Therefore, the allegations of the petitions did not "unambiguously exclude coverage," because it was entirely possible that at the time of the accident, the tractor could have been covered.

*Id*.

In other words, *Larsen* found a duty to defend based solely on the possibility, not even hinted to in the pleadings, that the truck in that case was a duly reported replacement auto. *Id*. at 678. The fact that the parties agreed that the acquisition of the vehicle had not been timely reported did not change the result. *Id.* at 671, 678.

The Court similarly finds here that, liberally construing the allegations and resolving all ambiguities in favor of the insured and the duty to defend, the allegations do not "clearly and unambiguously fall outside the scope of coverage." *See Colony Nat. Ins. Co. v. Unique Indus. Prod. Co.*, 487 F. App'x 888, 892-93 (5th Cir. 2012). Like in *Larsen*, it is entirely possible that at the time of the accident the Truck could have been covered as a temporary substitute.

The Court further notes that the procedural history of the Case, although not a factor in the Court's legal analysis, is consistent with the conclusion that the pleadings triggered the duty to defend. Canal waited eighteen months from when the first petition was filed in the State Court Litigation to file its initial declaratory action in Tennessee. In response to Lopez's argument in her motion to dismiss that Canal had unreasonably delayed filing its case, Canal asserted that it "sought declaratory relief for the issues pertaining to the claims made in the underlying tort lawsuit *once the coverage issues became apparent*." Canal Resp. in Opposition to Motion, ECF No. 47 ¶ 41 (emphasis added). Along the same lines, Lopez asserts that the fact that the Truck was not listed on the Policy "was determined only after months of heated litigation, long after Canal's duty to defend had already been triggered." Lopez Resp. ¶ 5. Those points support the conclusion that the pleadings in the State Court Litigation caused Canal, for whatever reason, to provide a defense to XMEX and Strader, and that whatever facts led Canal to ultimately dispute its duty to defend were not apparent at that early juncture.

**b.      The pleadings adequately alleged that each of XMEX, Strader, and Franceware were an insured under the Policy**

As stated earlier, the Policy provides that Canal has a duty to defend any "insured" against a suit seeking damages because of bodily injury caused by an accident and resulting from the ownership, maintenance, or use of a "covered auto." Policy 29. The resolution of the Motions therefore turns on whether the Truck was a "covered auto" and whether each relevant party was an "insured."  Having found that the underlying pleadings sufficiently alleged that the Truck was a covered auto, the Court now turns to a determination of whether the relevant parties qualify as an "insured" for the purposes of the duty to defend.

For the following reasons, the Court concludes that the pleadings adequately alleged facts indicating that each of XMEX, Strader, and Franceware were an "insured" under the Policy, while the facts do not establish that the Trailer Defendants were "insured."

The Policy defines an "insured," in pertinent part, as

      a.      You for any covered auto.
      b.      Anyone else while using with your permission a covered "auto" you own, hire or borrow except [certain exceptions not relevant here].
      c)      Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Policy 29-30.

### i.      XMEX

As the Court has already found that the pleadings adequately alleged facts indicating that the Truck was a covered auto, XMEX is unambiguously an insured because it is the policyholder. *See* Policy 1, 29 (defining insured as "you for any covered auto").

###### ii.        Strader

Lopez argues that Strader is an insured for the purposes of the duty to defend because "fairly interpreted, the Munoz Defendants' pleadings allege that Strader, with XMEX's permission, used a covered auto that XMEX had borrowed from Moore Freight." Lopez Mot. ¶ 13. To the extent the pleadings in fact allege that XMEX borrowed the Truck from Moore, and that Strader was using it with XMEX's permission, Strader would indeed be an insured. *See* Policy 29-30 (an insured includes "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow.").

Lopez generally cites Section V of the Munoz Live Petition in support of her argument. Thus, she apparently bases her argument on the following language:

> Munoz was a passenger in a tractor owned by Defendant Moore, and under the control of Defendants Moore, XMEX, and Strader.
>
> . . . .
>
> Roger Franceware was carrying a load (hereinafter referred to as a "Renegade" load) that was to profit not, Defendant Moore, but Defendant Xmex and Defendant Strader, and was driving a 2007 International truck tractor owned by Defendant Moore.

Munoz Live Pet. 3-4.

The Court also finds illuminating the following additional language from that pleading:

> Dan Moore had negligently allowed a high level employee of Defendant Moore, Defendant Charles Strader to run renegade loads using Moore Freight Inc. equipment.
>
> . . . .
>
> Dan Moore heard from his friend who had a trucking business that Charles Strader was doing renegade loads, Dan Moore knew that Mr. Strader was not entering loads in the computer, that a driver, Roger Franceware, had not turned in logs for an entire month and had run up more than $6000.00 in fuel charges. Dan Moore was told by his maintenance manager that several trailers were "pinged" (located by GPS) in areas of Texas that they had no business in, and that in

locations in Kansas, there were more than two trailers dedicated to one tractor, that Charles Strader had bought 3 trucks on August 5th and 15 trailers and that on August 6, 2010 Charles Strader had bought liability insurance for Xmex Transport, LLC.

*Id.* at 5.

The Court, noting that Canal does not argue otherwise, agrees with Lopez's characterization of this pleading. Though the Munoz Defendants language does not precisely conform to the terms of the Policy, they clearly allege that Moore Freight owned the Truck and that it was under the control of some combination of Moore Freight, XMEX, and Strader. They separately allege that Strader, on XMEX's behalf, was using Moore Freight's equipment to run renegade loads. In other words, they alleged that Strader was using the Truck, and that Strader, as XMEX's principal, necessarily did so with XMEX's permission. Though the pleadings do not precisely allege how XMEX and Strader obtained the Truck from Moore Freight, their implication, resolving all doubts in favor of the insured, is that Strader borrowed it on XMEX's behalf.

"If there is 'a doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to the defend action, such doubt will be resolved in the insured's favor.'" *PPI Tech.*, 515 F. App'x at 313-14 (quoting *Nat'l Union Fire*, 939 S.W.2d at 141). The Court therefore finds that the Munoz Live Petition adequately alleged facts indicating that Strader was potentially an insured for purposes of the duty to defend. *See* Policy 29-30 (an insured includes anyone "using with your permission a covered 'auto' you own, hire or borrow").

### iii.   Franceware

As with Strader, Lopez argues that the Munoz Live Petition adequately alleges facts indicating that Franceware was an insured. For the reasons stated above with regard to Strader,

and based upon the same language in the Munoz Live Petition, the Court agrees. Resolving all doubts in favor of the insured, as the Court must, the Munoz Live Petition indicates that XMEX borrowed the Truck from Moore Freight, and that Franceware was using it with XMEX's permission. *See PPI Tech*, 515 F. App'x at 313-14. The Court therefore finds that the Munoz Live Petition adequately alleged facts indicating that Franceware was an insured. *See* Policy 29-30 (an insured includes anyone "using with your permission a covered 'auto' you own, hire or borrow").

### iv.    Trailer Defendants

As noted above, the Trailer Defendants moved for a declaration that Canal is required to provide them a defense, but none of the Motions provide any support for that assertion. The Trailer Defendants first simply adopted by reference Lopez's Motion for Summary Judgment Regarding Plaintiff Canal's Duty to Defend. ECF No. 58. Lopez's Motion for Summary Judgment, however, argues that Canal owes a duty to Franceware, Strader and XMEX, but does not in any way addresses Canal's duty to defend the Trailer Defendants.

The Trailer Defendants' Response does not further elaborate on that issue. The most substantive argument for their position is that they "would be an additional insured under any policy issued by Canal to Xmex since Trailer Defendants' trailer was hooked up to the tractor." Trailer Defs. Resp. ¶ 2. The Trailer Defendants do not explain the logic behind this assertion anywhere in their brief. Instead, the Trailer Defendants assert only that "Canal's duty to defend was invoked by the Trailer Defendants' pleadings in the state court litigation." Trailer Defs.

Resp. ¶ 5; *see id*. ¶¶ 18, 19.[12] The Trailer Defendants are not only defendants in the Case, they are defendants in the State Court Litigation as well. Though courts, this Court among them, sometimes colloquially refer to the "pleadings" in the underlying litigation when analyzing the duty to defend, the case law indicates that it is only the plaintiff's pleadings in the underlying litigation, not the defendant's pleadings, that trigger the duty to defend. *See, e.g., Freeport Welding*, 699 F.3d at 840 (holding that under eight-corners rule the insurance policy and third-party plaintiff's pleadings determine duty to defend). The Court is not aware of any case where a court considered a state court pleading other than the plaintiff's in analyzing the duty to defend.

In any event, the Court need not decide that the Trailer Defendants' pleading is beyond the bounds of the duty to defend analysis, because that pleading does not appear anywhere in the record of the Case.[13] As the Trailer Defendants do not discuss the substance of that absent pleading and thus apparently rest on their statement that "Canal's duty to defend was invoked by the Trailer Defendants' pleadings in the state court litigation," the Court cannot assess this argument, and accordingly rejects it.

Furthermore, the Court notes that the Trailer Defendants' assertion that they are additional insureds "under any policy issued by Canal to Xmex since Trailer Defendants' trailer was hooked up to the tractor" is simply not sufficient, alone, to allege a duty to defend. Trailer Defs. Resp. ¶ 2. Canal's duty to defend extends only to an "insured" who faces a suit for damages because of bodily injury caused by an accident and resulting from the ownership,

---

[12] The Trailer Defendants make reference to their own pleading in the State Court Litigation five separate times in three widely separated paragraphs, thereby obviating the possibility that the Trailer Defendants intended to refer to some other party's pleading and erroneously referred to their own. Trailer Defs. Resp. ¶¶ 5, 18, 19.

[13] As the Trailer Defendants do not state that their pleading is attached, it appears that the pleading's absence is not simply a failure to include an intended attachment.

maintenance, or use of a "covered auto." Policy 29. The Trailer Defendants' assertion that Canal

owes them a duty to defend because the Trailer was attached to the Truck speaks only to the

potential that the Trailer was a covered auto under the Policy. It does not, however, in any way

establish that the Trailer Defendants were an "insured" to whom Canal would owe a duty to

defend. These are two separate issues and the Trailer Defendants cannot show Canal's duty to

defend without establishing that the Trailer Defendants are an "insured" under the Policy. Policy

29. The Trailer Defendants' incorporation by reference of the Lopez Motion does not shed any

light on this issue as Lopez did not argue that Canal owed a duty to defend the Trailer

Defendants.

The party seeking summary judgment bears the initial burden of identifying those

portions of the record which it believes demonstrate the absence of a genuine issue of material

fact. *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir.

1996).  The Trailer Defendants have failed to point the Court to any evidence which would

establish that the Trailer Defendants are insured under the Policy; therefore, they have failed to

establish that Canal owes a duty to defend. In light of the foregoing discussion, the Court finds

that no evidence has been presented showing that Canal owes a duty to defend the Trailer

Defendants and accordingly rejects the Trailer Defendants' motion for summary judgment.

### 4.    Applicability of Policy exclusions

The parties dispute whether the Employee Exclusion, Fellow Employee Exclusion, and

Occupant Hazard Exclusion negate Canal's duty to defend. The Court addresses each exclusion

in turn. "Where, as here, the disputed provision is an exclusion, the insurer bears the burden of

establishing that the exclusion applies." *Tex. Molecular*, 424 F. App'x at 357.

a.      **The Employee Exclusion and Fellow Employee Exclusion do not negate Canal's duty to defend**

The parties exhaustively debate whether the Employee Exclusion and Fellow Employee Exclusion preclude coverage under the Policy. For the purposes of the duty to defend analysis, however, this debate is beside the point: the pleadings do not clearly allege facts indicating that either Munoz or Franceware was an "employee" according to any definition of the term.

Specifically, the Munoz Defendants alleged that Munoz was not employed by any of the defendants in the State Court Litigation. *See* Munoz Live Pet. 4. Lopez and Rosa Franceware both pleaded in the alternative that Franceware was not employed by any of the defendants in the State Court Litigation. *See* Lopez Live Pet. 6; Franceware Live Pet. 10. Because the Court must resolve all doubts in favor of the insured, it is of no moment that each decedent's survivors also pleaded that the other decedent *was* acting in the course and scope of his employment. *See Colony*, 487 F. App'x at 892. Because the pleadings do not unambiguously indicate that Munoz or Franceware were employees, the Court holds that the employee exclusion and fellow employee exclusion do not negate Canal's duty to defend.

b.      **The Occupant Hazard Exclusion**

The Occupant Hazard Exclusion Endorsement ("OHE") provides that "[t]his insurance does not apply to . . . 'Bodily Injury' sustained by any person while in or upon, entering or alighting from the 'auto.'" Policy 30, 52. Were the OHE enforceable, it would negate the duty to defend because the pleadings clearly indicate that Munoz and Franceware suffered bodily injuries while riding in the Truck.

Neither the Texas Supreme Court nor any other Texas appellate court appears to have addressed whether such exclusions are valid under Texas law. At least two federal district courts

in Texas, however, have held that an OHE exclusion, nearly identical to that at issue here, would violate Texas public policy. In *OOIDA Risk Retention Group v. Williams*, 544 F. Supp. 2d 540, 547 (N.D. Tex. 2008), *rev'd on other grounds* 579 F.3d 469 (5th Cir. 2009) and *Canal Indemnity Corporation v. Aguilar*, C.A. No. 07-1379, 2008 WL 8053431 (S.D. Tex. Jan. 7 2008), the courts found that such an exclusion conflicted with Texas legislative intent to require mandatory liability insurance for commercial motor carriers. *OOIDA Risk*, 544 F. Supp. 2d at 546-57; *Aguilar*, 2008 WL 8053431, at *3.  There is no doubt that the Truck qualifies as a "commercial motor vehicle" for the purposes of the relevant Texas statutes relied on in *OOIDA Risk*. *See* Tex. Trans. Code §§ 548.001; 643.101. Having reviewed the statutes and considered the *OOIDA Risk* court's analysis, the Court agrees that the OHE policy conflicts with Texas public policy and is unenforceable. *See OOIDA Risk*, 544 F. Supp. 2d at 546-57.  In coming to this conclusion the Court notes several federal courts of appeal have reached the same conclusion under the laws of other states when faced with a similar, if not the same, exclusion. *See Canal Ins. Co. v. Ashmore*, 126 F.3d 1083, 1087 (8th Cir. 1997) (Arkansas law); *Canal Ins. Co. v. Benner*, 980 F.2d 23, 24-25 (1st Cir. 1992) (per curiam) (Maine law); *Great W. Cas. Co. v. Canal Ins. Co.*, 901 F.2d 1525, 1528 (10th Cir. 1990) (Kansas law).

Because the OHE is unenforceable as void against public policy, the Court holds that it does not work to negate Canal's duty to defend.

## III.    CONCLUSION

The Court finds that, based on the eight-corners rule, the underlying pleadings and Policy read together raise the potential that the Truck was a covered auto under the Policy and that

XMEX, Strader, and Franceware were potential insureds, thus triggering Canal's duty to defend those three parties.

The Court further finds that no party has pointed the Court to any evidence in the record sufficient to establish that the Trailer Defendants were insured under the Policy. As a result, the Court finds that there is no evidence that the underlying pleadings triggered Canal's duty to defend the Trailer Defendants.

For the foregoing reasons, the Lopez Motion, ECF No. 57,  is **GRANTED**, the Trailer Defendants' Motion, ECF No. 58, is **DENIED**, and the Canal Motion,  ECF No. 59,  is **DENIED**.


**SO ORDERED**.

SIGNED this 4th  day of September, 2014.


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE