IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS,
EL PASO DIVISION

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| XMEX TRANSPORT, LLC, CHARLES | § | |
| STRADER, LORENA MUNOZ, | § | |
| individually and on behalf of the | § | |
| ESTATE OF LORENZO MUNOZ, and | § | NO. 3:13-cv-00156-KC |
| as next friend of L. M. and C. M., | § | |
| minor children, VIRGINIA MUNOZ, | § | |
| ROSA FRANCEWARE, individually | § | |
| and as next friend of E. L. F., a minor, | § | |
| and as administratrix of the ESTATE | § | |
| OF ROGER FRANCEWARE, JESSICA | § | |
| LOPEZ, Administratrix of the | § | |
| ESTATE OF ROGER FRANCEWARE | § | |
| and as next friend of A. F. and J. F., | § | |
| minor children, A-Z TRAILERS, INC., | § | |
| DYKES & DYKES TRAILERS, INC., | § | |
| GOAL TRANSPORTS, INC. d/b/a | § | |
| CALVIN K.TRANSPORTATION, LLC, | § | |
| JOSE M. GOMEZ, ANDRES SOTELO, | § | |
| TRANS FRONT, INC., OSCAR | § | |
| FLORES, JOAQUIN CORTEZ | § | |
| SANCHEZ, TRANSPORTES | § | |
| AMERICANOS, and SMTC MEX-HOLD, | § | |
| Defendants. | § | JURY DEMANDED |

**MOTION FOR SUMMARY JUDGMENT OF CANAL INSURANCE COMPANY ON
THE DUTY TO INDEMNIFY AND ALL COUNTER-CLAIMS OF JESSICA
LOPEZ AS ADMINISTRATRIX OF THE ESTATE OF ROGER FRANCEWARE
AND AS NEXT FRIEND OF A.F. AND J.F.**

TO THE COURT:

Canal Insurance Company ("Canal"), Plaintiff, files this Motion for

Summary Judgment on the Duty to Indemnify and on the all of the Counter-

1

Claims of Jessica Lopez Administratrix of the Estate of Roger Franceware and as next Friend of A.F. and J.F., minors ("Lopez"), pursuant to Federal Rule of Civil Procedure 56. In support of its Motion, Canal shows this Court as follows:

## SUMMARY JUDGMENT STANDARD IN INSURANCE CASES

1. In the insurance coverage context, an insured or claimant seeking coverage bears the initial burden of proving that a loss is covered under the terms of an insurance policy. The burden then shifts to the insurance carrier to demonstrate an exclusion applies. Once the insurer has established that an exclusion applies, the insured then has the burden of proving the application of an exception to the exclusion. *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 945 (Tex.1988); *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546 (5th Cir. 2004).

2. Unlike the duty to defend, the duty to indemnify is a narrow duty, and is controlled not by the pleadings, but by the facts proven at trial in the underlying litigation. *Gilbane Bldg. Co. v. Admiral Ins. Co.,* 664 F.3d 589, 601 (Tex.2011), *citing Pine Oak Builders Inc. v. Great American Lloyds Ins. Co.,* 279 S.W.3d 650 (Tex.2009).

3. The duty to indemnify arises only once liability has been conclusively determined. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011)*, quoting* 14 *Couch on Insurance* § 200:3. Therefore the duty to indemnify usually is not justiciable until after the underlying litigation is resolved because coverage may turn on facts that are proven even if they are

not pled. *Ewing Constr. Co. v. Amerisure Ins. Co.,* 684 F.3d 512 (5th Cir. 2012).

4.    Under Texas law, the insured bears the burden of establishing the insurer's duty to indemnify by presenting sufficient facts to demonstrate coverage under the policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 532 F.3d 398, 401 (5th Cir.2008). The duty to indemnify is triggered only by the actual facts establishing the insured's liability in the underlying litigation. *Continental Cas. Co. v. Consolidated Graphics, Inc.,* 656 F.Supp.2d 650, 657 (S.D.Tex.2009).

## DOCUMENTS RELIED UPON

5.    Canal relies on the following documents to support its Motion for Summary Judgment.

| Exhibit | Canal MSJ Appendix Bates Stamp Number | Exhibit Description |
|---------|---------------------------------------|---------------------|
| A | 001-070 | Xmex Policy PIA06033700 |
| B | 071-083 | Texas Highway Patrol Major Crash Investigation |
| C | 084-090 | Munoz Plaintiffs' Original Petition, filed October 25, 2010 |
| D | 091-099 | Munoz Plaintiffs' Supplemental Petition |
| E | 100-108 | Munoz Plaintiffs' First Amended Petition |
| F | 109-118 | Munoz Plaintiffs' Third Amended Petition |
| G | 119-130 | Munoz Plaintiffs' Fourth Amended Petition |
| H | 131-144 | Munoz Plaintiffs' Amended Petition of February 14, 2014 |

| Exhibit | Canal MSJ Appendix Bates Stamp Number | Exhibit Description |
|---|---|---|
| I | 145-157 | Munoz Plaintiffs' Amended Petition of March 10, 2014 |
| J | 158-166 | Rosa Franceware's Objections to Munoz Plaintiffs' Proposed Judgment |
| K | 167-169 | Jessica Lopez' Adoption by Reference |
| L | 170-187 | Jessica Lopez's Sixth Amended Petition |
| M | 188-207 | Rosa Franceware's Petition |
| N | 208-231 | Final judgment signed by the Court |
| O | 232-233 | Title to the 2007 Freightliner |
| P | 234-265 | Jury Charge in underlying lawsuit |

## STATEMENT OF THE CASE

6.     Canal issued a policy of insurance, policy number PIA06033700 to Xmex Transport LLC (the "Xmex Policy") with a policy period from 8/6/2010 until cancelled with Xmex Transport, LLC ("Xmex") as the named insured.   (*See*, policy, Exhibit "A", CANAL Appendix page 001).

7.     An accident took place on August 17, 2010 involving a 2007 International tractor with VIN 2HSCNSCR57C432761.   (*See*, accident report, Exhibit "B", CANAL Appendix page 073; *See,* title to the 2007 International owned by Moore Freight, attached as Exhibit "O", CANAL Appendix page 232 to 233).   In the single vehicle accident, Roger Franceware and Lorenzo Munoz

died. Both Franceware and Munoz were occupants in the cab of the 2007 International at the time of the accident.

8. Under the Business Auto Declarations for the Xmex Policy, only those autos that fell under symbol "7" were covered autos for liability purposes. (See, Exhibit "A", CANAL Appendix page 023).

9. Under the Business Auto Coverage Form, symbol "7" refers to "Specifically Described Autos", which in turn is defined as "only those 'autos' described in Item Three of the declarations for which a premium charge is shown (and for Liability coverage any 'trailers' while attached to any power unit described in Item Three)." (*See*, Exhibit "A", CANAL Appendix page 028).

10. In Item Three of the Xmex Policy, three vehicles are described: a 2005 International with a VIN of 2HSCNAPR45C034815; a 2005 International with a VIN 2HSCNAPR05C034505; and a 2005 International with a VIN of 2HSCNAPR85C034817. (See, Exhibit "A", CANAL Appendix page 024).

11. The vehicle involved in the accident, the 2007 International with VIN 2HSCNSCR57C432761, was not a specifically described vehicle on the Xmex Policy. The trailer involved in the accident was also not listed on the Xmex Policy.

12. There is no evidence the 2007 International tractor with VIN 2HSCNSCR57C432761 was being acquired by Xmex or had been acquired by Xmex. There is no evidence the 2007 International was being used with the permission of the owner of the vehicle, Moore Freight, as a temporary replacement vehicle for one of the other three listed vehicles, or that one of the

other three listed vehicles was ever out of service because of breakdown, repair, service, loss or destruction such that a temporary substitute vehicle would be necessary. (*See* Exhibit "A", Xmex Policy, CANAL Appendix page 029, Business Auto Coverage Form, Section I(B)(2) and Section I(C)(3)(a),(b),(c),(d) and (e)).

13.    According to the accident report, Munoz was driving at the time of the accident.    However, whether Munoz or Franceware was driving, it is undisputed they were involved in interstate transportation.

14.    Following the accident, a number of persons sued Xmex and Charles Strader.    (*See*, petitions, attached as Exhibits "C" through "I", "L" and "M" (collectively, the "Underlying Lawsuits") CANAL Appendix pages 084 to 157, pages 170-187 and pages 188-207).    More specifically, the Munoz Claimants sought recovery against Xmex and Strader, and for a time sought recovery against Rosa Franceware as Representative of the Estate of Roger Franceware. Jessica Lopez as Administratrix of the Estate of Roger Franceware also sued Xmex and Moore Freight and Munoz.    (*See*, petition of Jessica Lopez, attached as Exhibit "L", CANAL Appendix page 170).    Rosa Franceware also filed suit against Xmex and Strader and Munoz.    (*See*, petition of Rosa Franceware, attached as Exhibit "M", CANAL Appendix page 188).

15.    No party ever filed suit or made affirmative claims against Jessica Lopez as Administratrix of the Estate of Roger Franceware.

16.    On March 10, 2014, the Munoz Claimants amended their petition to drop all of their claims against Rosa Franceware as Representative of the Estate of Roger Franceware. (*See*, Exhibit "I", CANAL Appendix pages 145 to 157).

17. The case went to trial, and resulted in a verdict. (*See*, Exhibit "P", CANAL Appendix pages 234-265). Prior to the time the court entered judgment, Rosa Franceware filed an opposition to the judgment proposed by the Munoz Claimants because they had dropped their claims against Rosa Franceware as Representative of the Estate of Roger Franceware. (*See*, Exhibit "J", Rosa Franceware opposition, CANAL Appendix pages 158 to 166). Jessica Lopez adopted the motion of Rosa Franceware. (*See*, adoption of motion filed by Jessica Lopez, Exhibit "K", CANAL Appendix pages 167 to 169). The trial court judge entered the judgment, and specifically noted the Munoz Claimants had dropped all claims against Rosa Franceware as Representative of the Estate of Roger Franceware. (*See*, Exhibit "N", Judgment signed by the court on June 9, 2014, CANAL Appendix page 220). The judgment reflects that Roger Franceware was an employee of both Xmex and Moore Freight. (*See*, Exhibit "N", Judgment signed by the court on June 9, 2014. CANAL Appendix page 210). The judgment is currently on appeal.

## SUMMARY OF ARGUMENT

18. Because neither the tractor nor the trailer in the accident were specifically listed vehicles under the Xmex Policy, and because the vehicles were not recently acquired vehicles, or vehicles used with the permission of its owner as temporary substitute vehicles, or that one of the other three listed tractors on the Xmex Policy was out of service because of breakdown, repair, service, loss or destruction such that a temporary substitute vehicle would be necessary, Canal has no duty to indemnify any party for the claims made in

the Underlying State Court Lawsuit under the terms of the Xmex Policy.

19.    In addition, because Franceware and Munoz were either employees or statutory employees of Xmex, no duty to indemnify either Xmex or Strader or Munoz or Franceware exists for the judgments rendered for the claimants seeking recovery through them or against them. Moreover, because Franceware and Munoz were statutory employees of Xmex, Canal owes nothing under the MCS-90 endorsement for their claims and those claiming through them. Furthermore, Canal does not owe a duty to provide any payments under the MCS-90 for any judgment rendered against either Franceware, Munoz or Strader because the MCS-90 only potentially obligates Canal to pay for judgments on behalf of the named motor carrier, in this case, Xmex.   In addition, the judgment is on appeal, and no party has a claim as an intended third party beneficiary and Canal owes no duty to pay any part of the judgment because it is not final.

20.    Finally, because there was a bona fide good faith dispute as to whether coverage existed under the Xmex Policy for the claims made by the Munoz Claimants against Jessica Lopez as administratrix of the Estate of Roger Franceware, as a matter of law, Canal should prevail on all of the extra-contractual counter-claims of Jessica Lopez as Administratrix of the Estate of Roger Franceware.   In addition, in the context of third party claims such as the claims made by the Munoz Claimants, no duty of good faith and fair dealing exists in Texas, and this Court should dismiss all of Lopez's counter-claims.

## ARGUMENTS & AUTHORITY

### A. The 2007 International Is Not Covered by Xmex Policy

21.     The Xmex Policy does not provide coverage for vehicles that are not specifically described in Item Three of the declarations.   In Item Three, the Xmex Policy does not list the 2007 International (VIN ending 32761) or the trailer involved in the accident, and no premium was ever charged on the Xmex Policy for the 2007 International or the trailer.

22.     When an insurance policy requires a vehicle to be listed or scheduled on the liability policy, and that vehicle is not listed or scheduled, and it is not a newly acquired vehicle, or a temporary substitute vehicle used with the permission of the owner to temporarily replace a listed vehicle that is out of service because of breakdown, repair, service, loss or destruction, then no duty to indemnify exists.  *See, Harco National Ins. Co. v. Bobac Trucking, Inc.*, 107 F.3d 733, 735-36 (9th Cir. 1997) (policy provides no coverage for unlisted vehicle); *Lancer Ins. Co. v. Hitts*, 5:09-CV-302 (CAR), 2010 WL 5351842, at *1 (M.D. Ga. Dec. 21, 2010) (same).

23.     In the case of *Canal Ins. Co. v. Lincoln Gen. Ins. Co.*, C07-553-JPD, 2008 WL 3103270, at *1 (W.D. Wash. Aug. 4, 2008), a driver was operating an unlisted vehicle.

25.     As the *Lincoln General* court noted:

> On November 13, 2005, defendant Iurie Pavelnco ("Pavelnco") was driving a Volvo tractor on Interstate 80 in Wyoming. The vehicle he was driving was leased from defendant Vladimir Litvinenko ("Litvinenko") pursuant to a Contractor/Carrier Operating Agreement with Anatoliy Polyakov, doing business as

> XL Freight Pro ("XL Freight Pro"). The services of
> Pavelnco as operator of the leased vehicle were
> included as part of the Contractor/Carrier Operating
> Agreement. The tractor operated by Pavelnco was rear-
> ended by a tractor-trailer driven by defendant Larry
> Longstreath. After the collision, Longstreath exited his
> vehicle to survey the damage and was struck by a
> tractor-trailer driven by Edna Churchill. Longstreath
> was seriously injured. Canal Ins. Co. v. Lincoln Gen.
> Ins. Co., C07-553-JPD, 2008 WL 3103270, at *1 (W.D.
> Wash. Aug. 4, 2008)

26.    Prior to the accident, Canal issued a Basic Automobile Liability Policy to

XL Freight Pro. The policy Declarations list a 1999 Freightliner Tractor and

"any trailer while singularly attached to a scheduled tractor" as scheduled

autos under the policy. Neither the Volvo tractor, nor the trailer, nor the

operator (Pavelnco) were listed in the Canal policy.

27.    The *Lincoln General* court went on to observe:

> Prior to oral arguments in this matter, Lincoln
> maintained that the 1999 Volvo Tractor scheduled on
> its policy constituted a "temporary substitute
> automobile" covered by Canal's policy obligations to
> defend for damages arising out of the use of such a
> vehicle. However, further inspection of the Canal
> policy reveals that the 1999 Volvo is not so covered.
> First, Lincoln has provided no evidence to suggest that
> the 1999 Volvo was used as a "substitute for an owned
> automobile" under the terms of Canal's policy. The
> undisputed facts reflect that the 1999 Volvo was
> neither a substitute nor a temporary auto; rather, the
> parties agree that it was an auto leased from
> defendant    Litvinenko    pursuant    to    the
> Contractor/Carrier Operating Agreement with Anatoliy
> Polyakov, Canal's insured. Second, Lincoln has
> presented no evidence regarding the prerequisite to the
> temporary substitute auto as defined by Canal's
> policy. Specifically, the record is devoid of evidence
> that the covered auto-the 1999 Freightliner Tractor-
> was "withdrawn from normal use for servicing or
> repair or because of its breakdown, loss or

> destruction." Accordingly, but for the possible application of the MCS-90 Endorsement, the policy issued by Canal does not provide coverage for the claims asserted by Longstreath in the underlying lawsuit. *Canal Ins. Co. v. Lincoln Gen. Ins. Co.*, C07-553-JPD, 2008 WL 3103270, at *1-2 (W.D. Wash. Aug. 4, 2008).

28.     In another case involving Canal, the court held the fact the vehicle was not listed precluded coverage and liability for damages. *Canal Ins. Co. v. YMV Transp., Inc.*, 867 F. Supp. 2d 1099, 1105 (W.D. Wash. 2011). In the *YMV* case, a Bering truck was being driven by S. Yasinskiy for YMV. The policy issued by Canal provided for vehicles only if they were listed. The Canal policy listed only a Volvo truck. In finding coverage did not exist, the *YVM* court noted that:

> Here, Canal asserts a number of facts, none of which are disputed, demonstrating that under the plain language of the Policy the Bering truck is not covered. First, the Policy only covers "those 'autos' described in Item Three of the Declarations for which a premium charge is shown." The Bering truck is not listed on the Declarations page. Second, the Policy covers certain after-acquired autos only where the Insured notifies Canal that it wants coverage for such autos. Here, if the Bering truck belongs to YMV, it was acquired before the Policy began. In any case, there is no evidence that YMV informed Canal that it wanted coverage for the Bering truck. Finally, the Policy covers substitute autos that are used with the permission of the owner when a covered auto is being repaired, has been destroyed, or is otherwise out of service. There is no evidence that the Bering truck was being used as a substitute auto for the Volvo truck, which is the only truck listed on the Declarations Page of the policy. Nor is there evidence that the Volvo truck was in disrepair or out of service. No party disputes these facts and the Court accepts them as true.
>
> In sum, Canal has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law that the Policy does not

> cover the Bering truck. Since the Policy does not cover the Bering truck, Canal is not liable for damages caused by the Bering truck, YMV, H & M, M. Yasinskiy, S. Yasinskiy, or H. Rodriguez. *Canal Ins. Co. v. YMV Transp., Inc.*, 867 F. Supp. 2d 1099, 1105 (W.D. Wash. 2011).

29. In the case before this Court, there is no evidence that the 2007 Freightliner or the trailer involved in the case before this Court were specifically described or listed vehicles, or were newly acquired vehicles, or temporary substitute vehicles that were borrowed with the permission of Moore Freight or anyone else to replace a listed vehicle on the Xmex Policy that had broken down, were being repaired, were being serviced, had been a loss or were destroyed. Because the party seeking to establish a duty to indemnify bears the burden of proof to demonstrate that such coverage exists, and because there is no evidence to support the duty to indemnify, no duty to indemnify exists under the Xmex Policy for any of the Plaintiffs' or Intervenors' claims in the Underlying Lawsuits, and Canal does not owe a duty to indemnify any party for claims made against Xmex, Strader, Franceware or Munoz under the Xmex Policy.

**B. Employee and Fellow Employee Exclusions Preclude Duty to Indemnify**

30. Operators of commercial motor vehicles involved in interstate commerce are statutory employees pursuant to 49 C.F.R. § 390.5. *See, Consumers County Mut. Ins. Co. v. PW & Sons, Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002); *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469 (5th Cir. 2009); *Canal Ins. Co. v. Flores,* — F. Supp. 2d —, 2009 WL 1033770 (W.D. Tex. 2009);

*Canal Indemnity Ins. Co. v. TexCom Transportation, LLC*, 2010 WL 2301007 (N.D. Tex. 2010). Because Munoz and Franceware are statutory employees, the employee exclusion and the fellow employee exclusion in the Xmex Policy eliminates the duty to indemnify.

31.    In the *TexCom* case, Chiazor and Awad were hauling interstate freight for TexCom Transportation, LLC ("TexCom"). A one-vehicle accident took place, and Chiazor, who was asleep in the sleeper cab of the rig, was seriously injured, and filed a lawsuit against the trucking company. *Id.* at * 1.

32.    Canal Indemnity contested coverage based on an Employee Exclusion. *Id.* at * 1-2.

33.    Chiazor argued that coverage existed under the Canal policy because he claimed he was an "independent contractor" and not an employee. The *TexCom* court rejected this claim and state that:

> The court need not decide whether Chiazor was an "independent contractor" or an "employee" under traditional common law principles because, in the context of this case, it is a distinction without a difference. *Id.* at *3.

34.    More specifically, the *TexCom* court noted that because the Canal policy was a public liability policy, designed specifically for use by motor carriers in the interstate trucking industry, the policy must be interpreted in a manner consistent with federal insurance requirements, like those found in the Motor Carrier Safety Act of 1984, 49 U.S.C. s 13906, and regulations promulgated by the Department of Transportation. *Id.* at *4; *See also, Ooida* 579 F.3d at 473.

35.    The term "employee" as defined by the Federal Motor Carrier's Safety Act

includes Franceware and Munoz. The regulation reads, in pertinent part, as follows:

> Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and freight handler. *See*, 49 C.F.R. § 390.5.

36.     As the *TexCom* court noted:

> Relying on this definition, the Fifth Circuit has interpreted the employee exclusions in a standard Texas commercial auto policy, like the policy issued by Canal to TexCom, to exclude from coverage injuries sustained by a truck driver while operating a covered vehicle, regardless of whether the driver was an "independent contractor" or an "employee" under traditional common law principles[1]. *TexCom*, at *4; *PW & Sons,* 307 F.3d at 365–66.

37.     After observing the definition of "employee" contained in 49 C.F.R. §390.5 controlled the question of Chiazor's status as a matter of law, the *TexCom* court held that:

> Thus, even if Chiazor meets the common law definition of an "independent contractor," he is an "employee" for purposes of the Canal Policy and falls squarely within the Employee Indemnification and Employer's Liability exclusion of that policy. *Id.*; *see also Canal Ins. Co. v. Flores*, No. 3-06-CV-84-KC, 2009 WL 1033770 at *7 (W.D. Tex. 2009) (driver for interstate motor carrier was "statutory employee" for purposes of policy provision that excluded from coverage "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured"). *TexCom*, at * 5.

---

[1] In the Underlying State Court Lawsuit, the trial court did not submit the statutory definition of "employee." (*See*, Exhibit "P", charge of the court, CANAL Appendix, page 240).

38.     Because Franceware and Munoz were statutory employees of Xmex, the

Employee Exclusion and the Fellow Employee eliminates coverage available

under the Moore Policy.

39.     As this Court in *Flores* case noted:

>       The Policy does not define "employee.[2]" . . .
>
>       Given the interstate nature of CDS/HRA's business
>       and the clear intention of the parties to comply with
>       federal insurance requirements by including an MCS-
>       90, the federal definition for what constitutes "an
>       employee" is relevant to the entire Policy. *See
>       Consumers County Mut. Ins. Co.,* 307 F.3d at 365-66;
>       *Pouliot v. Paul Arpin Van Lines, Inc.,* 292 F.Supp.2d
>       374, 381 (D.Conn.2003) ("[A]ny situation involving a
>       motor vehicle accident on a public highway is probably
>       covered by [49 C.F.R.] § 390.5) (collecting cases). *Canal
>       Ins. Co. v. Flores*, 3:06-CV-84-KC, 2009 WL 1033770,
>       at *6-7 (W.D. Tex. 2009).

40.     In addition, even if Munoz only rode as a passenger, under the statutory

---

[2] In the case before this Court, the Xmex Policy defines "employee" as follows:

>       **SECTION V – DEFINITIONS**
>                                       . . .
>
>       F.      "Employee" includes a "leased worker." "Employee" also includes
>               any individual, other than an employer, who is employed by an
>               employer and who in the course of his or her employment directly
>               affects commercial motor vehicle safety. Such term includes a
>               driver of a commercial motor vehicle (including an independent
>               contractor while in the course of operating a commercial motor
>               vehicle), a mechanic, and a freight handler. Such term does not
>               include an employee of the United States, any State, any political
>               subdivision of a State, or any agency established under a compact
>               between States and approved by the Congress of the United States
>               who is acting within the course of such employment. "Employee"
>               does not include a "temporary worker". (*See*, Exhibit "A", CANAL
>               Appendix, page 037).

regulations, he would still be considered a statutory employee. *United Fin. Cas. Co. v. Abe Hershberger & Sons Trucking Ltd.*, 2012 WL 457715 (Ct. App. – 10th Dist. Ohio 2012).

41.     In the *Abe Hershberger* case, the court observed:

> Nothing in section 390.5 limits an independent contractor's status as a statutory employee to times when the individual is actually operating a commercial motor vehicle. The regulatory language referring to an independent contractor "in the course of operating a commercial motor vehicle" must relate to the second requirement under that section—that the employee directly affects commercial motor vehicle safety. The plain language of the regulation requires only that the individual directly affects commercial motor vehicle safety while in the course of his or her employment, a requirement that may be satisfied by operation of a commercial motor vehicle. Satisfaction of that requirement, however, is not limited to actually driving a commercial motor vehicle. In fact, a myriad of courts have held that a passenger in a commercial vehicle may qualify as an employee under section 390.5. *Id.*at *5; *see also, PW& Sons,* 307 F.3d at 365-66; *Basha v. Ghalib*, 2008 WL 3199464 (Ct. App. – 10th Dist. Ohio 2008).

42.     Thus, the holdings in *PW& Sons, Ooida, Canal v. TexCom* and *Canal v. Flores* firmly establish the proposition that drivers such as Franceware and Munoz are to be considered employees of the motor carriers they are driving for at the time of their injuries. Based on the application of these cases, this Court should enter judgment in favor of Canal and declare that no duty to indemnify exists under the Xmex Policy for any of the claims made by those persons claiming by or through or under Munoz or Franceware in the Underlying State Court Lawsuit.

## C. No Suretyship Obligation for Employees

43.     As opposed to an "ordinary insurance provision to protect the insured," the MCS-90 potentially imposes "a suretyship obligation" on insurers of the named motor carrier, but only under certain circumstances.     *Travelers Indemnity Co. v. Western American Specialized Transportation Services, Inc.*, 409 F.3d 256, 260 (5th Cir. 2005).

44.     The MCS-90 does not create a suretyship obligation for claims made by any employees of the motor carrier to whom the MCS-90 applies.     *Perry v. Harco Nat. Ins. Co.*, 129 F.3d 1072, 1073 (9th Cir. 1997).   (*See*, Exhibit "A", CANAL Appendix pages 054–055).

45.     In the *Perry* case, Kenneth Perry was driving a vehicle in interstate commerce for Sunset.  Perry's wife sued Sunset, and tried to enforce a consent judgment of $750,000 against the insurance carrier for Sunset, Harco.

46.     As the *Perry* court noted:

> The vehicle driven by Perry was not covered by Sunset's insurance policy. The insurance policy, however, did contain an MCS-90 Endorsement for the protection of the public required by Department of Transportation regulations. The Endorsement requires Harco to indemnify Sunset for final judgments finding liability for negligence associated with any of Sunset's vehicles. It specifically excludes liability resulting from injury to or death of Sunset's employees while acting in the course of their employment. Appellant argues that her husband's death was covered by the Endorsement because he was not Sunset's employee, but rather an independent contractor. The district court granted Harco summary judgment because the federal regulations that provide for the Endorsement, include "independent contractors" within the definition of "employees." *Id. at* 1073.

47.     The *Perry* court went on to observe that:

>        Under the authority of the Motor Carrier Safety Act of
>        1980, 49 U.S.C. § 13906 (Motor Carrier Act), the
>        Secretary of Transportation promulgated the
>        regulations at issue in this case, 49 C.F.R. §§ 387.1,
>        390.1, and 390.5. The district court relied on the plain
>        language of the regulations when it evaluated
>        Appellant's claim. The Endorsement contained in
>        Sunset's policy is set forth in and mandated by 49
>        C.F.R. § 387.1. The Endorsement provides insurance
>        for liability "for bodily injury or death of any person ...
>        excluding injury to or death of the insured's employees
>        while engaged in the course of their employment." 49
>        C.F.R. § 387.1. The relevant definition of "employee" is
>        found in 49 C.F.R. § 390.5. The term is defined as "a
>        driver of a commercial motor vehicle (including an
>        independent contractor while in the course of
>        operating a commercial motor vehicle)." 49 C.F.R. §
>        390.5. This definition applies to the entire chapter. *See*
>        49 C.F.R. § 390.1.     For the purpose of the
>        Endorsement, the district court concluded that Perry
>        was an employee of Sunset's "[a]s a matter of law."
>        Therefore, his death was not covered by the
>        Endorsement [MCS-90]. *Id.* at 1074; *see also*,
>        *Consumers County Mut. Ins. Co. v. PW & Sons,*
>        *Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002); *White v.*
>        *Excaliber Ins. Co.*, 599 F.2d 50, 53 (5th Cir. 1979).

48.     As a result, because they are statutory employees, Canal does not owe

under the MCS-90 for those persons claiming by or through or under Munoz or

Franceware in the Underlying State Court Lawsuit.

### D.     MCS-90 Only Requires Suretyship for Motor Carrier

49.     To the extent the MCS-90 endorsement does apply, the potential

application in this case is limited.

50.     As noted by the Fifth Circuit in *Ooida*:

>        The federal regulation that requires the MCS–90
>        Endorsement clearly defines the "insured" as "the

motor carrier *named* in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." [Emphasis added.] 49 C.F.R. § 387.5. The Federal Motor Carrier Safety Administration has issued regulatory guidance emphasizing that "Form MCS–90 ... [is] not intended, and do[es] not purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary." Federal Motor Carrier Safety Administration, *Regulatory Guidance for Forms Used To Establish Minimum Levels of Financial Responsibility of Motor Carriers,* 70 FR 58065–01 (October 5, 2005). *Ooida,* 579 F.3d at 477–78.

51.    Thus, to the extent liability has been attributed to either Munoz or Franceware or Strader, the MCS-90 does not create a suretyship obligation on the part of Canal to ever have to pay for such judgments for those individuals.

### E.    No Bad Faith in Third Party Claims

52.    In Texas, in the context of third party claims, the tort claim of breach of the duty of good faith and fair dealing is not recognized. *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521 (5th Cir. 2013); *see, e.g., Mid–Continent Ins. Co. v. Liberty Mut. Ins.,* 236 S.W.3d 765, 776 (Tex.2007) (insurer's common law duty to act reasonably when handling insured's defense is limited to its *Stowers* duty.) As a result, Canal is entitled to summary judgment on the counter-claims made by Lopez for breach of the duty of good faith and fair dealing.

55.    Furthermore, not every complaint about an insurer's conduct is actionable. *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456 (5th Cir.1997). Only if a decision to deny a claim is an unreasonable one, will an

insurer be liable for a breach of its duty to the policyholder. *Classic Performance Cars, Inc. v. Acceptance Indem. Ins. Co.*, 464 F. Supp. 2d 652, 665 (S.D. Tex. 2006).

56.     In addition, an insurer owes no duties to the insured beyond those set out in the contract itself. *Higginbotham,* 103 F.3d at 460; *see also United Servs. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 783 (Tex.App.-San Antonio 1991, writ denied); *see also Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (1991); *Classic*, 464 F. Supp. 2d at 665-66.

57.     Texas law interpreting the Insurance Code makes it clear that such claims require the same predicate for recovery as those for bad faith causes of action. *Higginbotham,* 103 F.3d at 460; *Vail v. Tex. Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 136 (Tex.1988); *Saunders v. Commonwealth Lloyd's Ins. Co.,* 928 S.W.2d 322, 324 (Tex.App.-San Antonio 1996, no writ). "Under Texas law, an insurer who can prove that it possessed a reasonable basis for denying or delaying payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, enjoys immunity from statutory bad faith under the Texas Deceptive Trade Practices Act and the Texas Insurance Code." *Saunders,* 928 S.W.2d at 324; *Classic*, 464 F. Supp. 2d at 665-66 (S.D. Tex. 2006).

59.     Because a bona fide good faith dispute as to coverage existed, and because Canal had a reasonable basis to deny coverage, all of the claims of Lopez should be dismissed by this Court, including claims under the DTPA and made under the Texas Insurance Code.

**PRAYER**

60.    Canal prays this Court declares no duty to indemnify exists.    Canal further prays this Court dismiss the counter-claims of Lopez.    Canal further prays for all other relief, general or special, at law or in equity, to which it shows itself entitled to receive.

RESPECTFULLY SUBMITTED:

BUSH & RAMIREZ, PLLC.

By:___/s/George T. Jackson___
George T. Jackson
Texas Bar No. 10466950
Federal Bar No. 15072
5615 Kirby Dr., Suite 900
Houston, Texas  77005
(713) 626-1555 Telephone
(713) 622-8077 Telecopier
gjackson.atty@bushramirez.com

**ATTORNEYS FOR PLAINTIFF,
CANAL INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I certify that on April 17, 2015, a copy of this document was served on all parties via electronic filing.

___/s/ George T. Jackson___