IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-13-CV-156-KC |
| | § | |
| XMEX TRANSPORT, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court considered Plaintiff Canal Insurance Company's ("Canal") Motion for Summary Judgment of Canal Insurance Company on the Duty to Indemnify and All Counterclaims of Jessica Lopez as Administratrix of the Estate of Roger Franceware and as Next Friend of A.F. and J.F. ("Canal Motion"), ECF No. 107, and the Munoz Defendants'[1] Motion for Summary Judgment on Plaintiff Canal Insurance Company's Duty to Pay Based on the MCS-90 Endorsement ("Munoz Motion"), ECF No. 109, in the above-captioned case (the "Case"). For the following reasons, the Canal Motion is **GRANTED** in part and **DENIED** in part, and the Munoz Motion is **DENIED** in its entirety.

I.  BACKGROUND

Unless otherwise noted, the following facts are undisputed.

---

[1] Throughout this Order, the Court refers to Lorena Munoz, individually and on behalf of the Estate of Lorenzo Munoz, and as next friend of L.M. and C.M., minor children, and Virginia Munoz, collectively as the "Munoz Defendants."

1

Canal issued auto insurance policy number PIA0603370 to XMEX Transport LLC ("XMEX").  *See* Ins. Policy Number PIA0603370 (the "Policy"), Compl. Ex. A, ECF No. 1-10.[2] The Policy was in effect from August 6, 2010, to "Until Cancelled."  *See id.* at 1.  On August 17, 2010, a 2007 International tractor with VIN number 2HSCNSCR57C432761 (the "Truck") was involved in a single-vehicle accident resulting in the deaths of both Roger Franceware ("Franceware") and Lorenzo Munoz ("Munoz") (collectively the "Decedents").  *See* Proposed Undisputed Facts ¶ 2 ("Canal Proposed Facts"), Canal Mot. Attach. 5, ECF No. 107-5; Def. Lopez's Resp. to Canal's Proposed Undisputed Facts in Connection with its Mot. for Summ. J. on the Duty to Indemnify and All Countercls. of Jessica Lopez as Administratrix of the Estate of Roger Franceware and as Next Friend of A.F. and J.F. ¶ 2 ("Lopez Response to Proposed Facts"), Def. Lopez's Resp. to Canal's Mot. for Summ. J. on the Duty to Indemnify and All Countercls. of Jessica Lopez as Administratrix of the Estate of Roger Franceware and as Next Friend of A.F. and J.O. Attach. 6, ECF No. 116-6; Munoz Defs.' Resp. to Canal's Proposed Undisputed Facts and Additional Proposed Facts ¶ 2 ("Munoz Response to Proposed Facts"), Munoz Defs.' Resp. in Opp'n to Canal's Mot. for Summ. J. on the Duty to Indemnify Ex. A, ECF No. 118-1.

Following the accident, on October 25, 2010, the Munoz Defendants filed Cause No. 2010-4169 in the 168th District Court of El Paso County, Texas (the "Underlying Suit"), seeking damages arising from Munoz's death.  *See* Munoz Defs.' Original Pet., Canal Mot. Ex. C, ECF No. 107-2.  The Munoz Defendants specifically listed the Estate of Roger Franceware as a

---

[2] Though Canal has attached a copy of the Policy to its motion, the Court notes that the attached copy is divided into two separate electronic attachments.  *See* Ins. Policy Number PIA0603370, Canal Mot. Ex. A, Attach. 1 4-51, ECF No. 107-1; Ins. Policy Number PIA0603370, Canal Mot. Ex. A, Attach. 2 1-22, ECF No. 107-2.  Accordingly, for ease of reference the Court cites to the undivided copy of the Policy provided with Canal's original Complaint.  *See* Compl. for Declaratory J. Ex. J, ECF No. 1-10.

defendant in their October 25, 2010, petition. *See id.* at 36. Lopez subsequently intervened in the Underlying Suit as administratrix of the Estate of Roger Franceware. Nearly three years later, on May 7, 2013, Canal initiated the instant Case, seeking a declaratory judgment that it had no duty to defend or indemnify Defendants in relation to the Underlying Suit, and that the MCS-90 endorsement found in the Policy is not applicable to any of Defendants' demands for payment. *See* Compl. for Declaratory J. 12 ("Complaint"), ECF No. 1.[3]

While the instant Case remained pending, the Underlying Suit proceeded to trial in Texas state court, resulting in a verdict. Canal Proposed Facts ¶ 11; Lopez Resp. to Proposed Facts ¶ 11; Munoz Resp. to Proposed Facts ¶ 11. *See also* Charge of the Ct. ("Jury Verdict"), Canal Mot. Ex. P, ECF No. 107-4; Corrective J. Signed June 3, 2014 ("Underlying Judgment"), Canal Mot. Ex. N, ECF No. 107-4. By their verdict, the jury found that "[i]n connection with the events giving rise to this suit" Franceware was "acting as an employee in the scope of his employment [with XMEX]." *See* Jury Verdict 100. The jury found, however, that Munoz was not acting as an employee in the scope of his employment with XMEX at the time of the accident. *See id.* at 101. On June 9, 2014, the state court entered its judgment, ordering that both Franceware and Munoz recover damages against XMEX. *See* Underlying J. 82-83. Neither the Underlying Judgment nor the Jury Verdict addressed the issue of whether the Truck was a covered auto under the Policy. *See generally* Underlying J.; Jury Verdict.

Subsequently, on September 4, 2014, this Court found that Canal had a duty to defend Franceware in the Underlying Suit. *See* Sept. 4, 2014, Order 34-35, ECF No. 77. As a result, on October 31, 2014, Lopez, as administratrix of the Franceware estate, filed her First Amended

---

[3] The Court's citations to documents filed in the Case refer to the page numbers superimposed upon them by the Court's electronic docketing system.

Answer and Counterclaim ("Lopez Counterclaims"), ECF No. 90, asserting causes of action against Canal for (1) breach of contract, (2) breach of the common law duty of good faith and fair dealing, (3) breach of the Texas Insurance Code, (4) breach of the Texas Deceptive Trade Practices Act, (5) gross negligence, and (6) claims based upon Lopez being a third-party beneficiary of the Policy. *Id.* at 6-10.

Canal filed the Canal Motion on April 17, 2015, praying for the Court to declare that "no duty to indemnify exists" under either the Policy's indemnification clause or the Policy's MCS-90 endorsement. Canal Mot. 21.[4] Lopez filed her response to the Canal Motion on May 1, 2015. *See* Def. Lopez's Resp. to Canal's Mot. for Summ. J. on the Duty to Indemnify and All Countercls. of Jessica Lopez as Administratrix of the Estate of Roger Franceware and as Next Friend of A.F. and J.O. ("Lopez Response"), ECF No. 116. On May 4, 2015, the Munoz Defendants also filed a response to the Canal Motion. *See* Munoz Defs.' Resp. in Opp'n to Canal's Mot. for Summ. J. on the Duty to Indemnify ("Munoz Response"), ECF No. 118. Canal filed its replies to both the Lopez and Munoz Responses on May 12, 2015. *See* Reply of Canal Ins. Co. to the Resp. of Jessica Lopez as Administratrix of the Estate of Roger Franceware and as Next Friend of A.F. and J.F. and the Adoption of Rosa Franceware to the Mot. for Summ. J. of Canal Ins. Co. ("Canal Reply to Lopez"), ECF No. 123; Reply of Canal Ins. Co. to the Resp. of the Munoz Defs. to the Mot. for Summ. J. of Canal Ins. Co. ("Canal Reply to Munoz"), ECF No. 124.

The Munoz Defendants filed the Munoz Motion on April 18, 2015, seeking summary judgment that "Canal has a duty to pay the [Underlying Judgment] against XMEX based on the

---

[4] Canal and Lopez later requested that the Court dismiss the Lopez Counterclaims. Mot. 21. However, for the reasons set forth in Canal's and Lopez's sealed Notice, ECF No. 137, the Court need not address Canal's requests in relation to the Lopez Counterclaims.

MCS-90 endorsement contained in the [P]olicy." Munoz Mot. 21. Canal filed its response to the Munoz Motion on April 27, 2015. *See* Resp. of Canal Ins. Co. to the Mot. for Summ. J. of the Munoz Defs. ("Canal Response to Munoz"), ECF No. 111. Lopez did not respond to the Munoz Motion.

## II.   DISCUSSION

### A.   Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

    B.    **Analysis**

        1.    **Canal has no duty to indemnify under the Policy's indemnification clause**

Canal argues that it has no duty to indemnify under the Policy's indemnification clause because neither Lopez nor the Munoz Defendants have presented evidence establishing that the Truck was a "covered auto" under the Policy. *See* Canal Mot. 5. Specifically, Canal asserts that "[t]here is no evidence the [Truck] was being acquired by [XMEX] or had been acquired by [XMEX]," nor that the Truck "was being used with the permission of the owner of the vehicle . . . as a temporary replacement vehicle." *Id.* Lopez responds that whether the Truck was

covered under the Policy "is not dispositive [because] the [Policy's] MCS-90 endorsement . . . may still require Canal to pay [the Underlying Judgment]." Lopez Resp. 2.  The Munoz Defendants agree with Lopez that "pursuant to the MCS-90 endorsement . . . Canal has a duty to pay . . . the [Underlying Judgment]." Munoz Resp. 6.  The Munoz Defendants further assert that "fact issues exist as to whether the [Truck] was 'acquired' by XMEX and therefore a covered vehicle under the Policy." *Id.* at 8, 24.

"The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009).  Generally, the duty to indemnify is "controlled by the facts proven in the underlying suit." *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 601 (5th Cir. 2011) (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)).  However, where the underlying case does not resolve all the factual issues necessary to determine coverage, a district court may consider other evidence "regarding facts necessary to determine coverage that were not adjudicated in the underlying case." *See Nat'l Union Fire Ins. Co. of Pitts., Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008).

Under the Policy's indemnification clause, Canal has a duty to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which [the Policy] applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Policy 29.  The Policy defines "covered autos" as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown." *See id.* at 23, 28.  Section I.C.3 of the Policy, however, creates an exception to the rule that only listed

autos are covered. Specifically, "[a]ny 'auto' [XMEX][5] do[es] not own while used with the permission of its owner as a temporary substitute for a covered 'auto' [XMEX] own[s] that is out of service" is also a "covered auto" under the Policy.[6] *Id.* at 29.

Here, the parties do not dispute that the Truck is not one of the specifically listed vehicles in Item Three. *See* Canal Proposed Facts ¶ 15; Lopez Resp. to Proposed Facts ¶ 15; Munoz Resp. to Proposed Facts ¶ 15. As a result, in order to establish that the Truck was a covered auto, Lopez and the Munoz Defendants must show that XMEX borrowed the Truck as a temporary substitute vehicle and that XMEX was using the Truck "with the permission of its owner." *See* Policy 29; *Nat'l Union*, 532 F.3d at 401 ("In Texas, the insured carries the burden to establish the insurer's duty to indemnify by presenting facts sufficient to demonstrate coverage.").

Before turning to the parties' summary judgment arguments, the Court first notes that though "[t]he insurer's duty to indemnify depends on the facts proven [at trial]," *see D.R. Horton-Tex.*, 300 S.W.3d at 744, neither the Jury Verdict nor the Underlying Judgment address or resolve the factual issues pertinent to determining whether the Truck was a temporary substitute vehicle. As a result, the Court considers, as it may, the evidence provided by the parties in determining whether an issue of fact exists as to coverage. *See Nat'l Union*, 532 F.3d at 404.

---

[5] The exact language of the Policy states that "[a]ny 'auto' *you* do not own while used with the permission of its owner as a temporary substitute for a covered 'auto' *you* own that is out of service" is also a "covered auto" under the Policy. *Id.* at 29 (emphasis added). Throughout the Policy, the words "you" and "your" refer "to the Named Insured shown in the Declarations." *See id.* at 28. XMEX is the named insured shown in the Declarations. *See id.* at 1.

[6] The Policy also provides that "'[t]railers' with a load capacity of 2,000 pounds or less designed primarily for travel on public roads [and] '[m]obile equipment' while being carried or towed by a covered 'auto'" also qualify as "covered autos" under the Policy. *See* Policy 29. However, because none of the parties argue that these provisions are applicable, the Court does not address them in this Order.

In support of its position that "[t]here is no evidence the [Truck] was being used with the permission of [its] owner," *see* Canal Mot. 5, Canal has provided a Certificate of Title for the Truck which lists Moore Freight Services, Inc. ("Moore Freight") as the Truck's owner. *See* Certificate of Title ("Truck Title"), Canal Mot. Ex. O, Attach. 4, ECF No. 107-4. Canal has further provided excerpts of Charles Strader's ("Strader") sworn testimony from the Underlying Suit in which Strader, the owner of XMEX, admitted that XMEX did not "have even implied [or] remotely implied authority" to use Moore Freight equipment. *See* Mar. 21, 2014, Tr. of Oral Arg. 42 ("Strader Testimony"), Canal Reply to Lopez Attach. 3, ECF No. 123-3. Accordingly, Canal has presented evidence that Moore Freight owned the Truck, and that Moore Freight had not given XMEX permission to use the Truck. By presenting evidence that XMEX could not have used the Truck with the Truck's owner's permission, Canal has met its initial burden on summary judgment of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact" as to whether the Truck was a "covered auto" under the Policy. *See Celotex*, 477 U.S. at 323; *see also* Policy 29 (stating that a temporary substitute vehicle must be "used with the permission of its owner"). Accordingly, the burden shifts to Lopez and the Munoz Defendants, as the non-moving parties, to "designate specific facts showing that there is a genuine issue for trial." *See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

To rebut Canal's argument, Lopez relies entirely on her assertion that Canal's duty to indemnify arises from the MCS-90 endorsement "regardless [of] whether or not [the Truck] is specifically described in the [P]olicy." Lopez Resp. 2. Lopez's argument fails. An insurer's obligations under a policy's indemnification clause and those under an MCS-90 endorsement,

"while linked, impose different obligations based on different requirements." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 882 (10th Cir. 2009). "[T]he obligation placed upon the insurer by the MCS-90 [is] one of suretyship," which is "triggered when the policy to which it is attached provides no coverage to the insured." *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001). As a result, "[t]he fact that [Canal] may ultimately have to satisfy a final judgment against [XMEX] in the [Underlying Suit], pursuant to the MCS-90 endorsement, does not preclude the court from holding as a matter of law that [Canal] has no duty to indemnify [XMEX] under the [Policy's indemnification clause]." *See John Deere Ins. Co. v. Truckin' USA*, Civ.A. No. 3:95-CV-1556-D, 1996 WL 734952, at *5 (N.D. Tex. Dec. 10, 1996); *see also Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Co., Inc.*, 317 F. Supp. 2d 693, 698-99 (W.D. La. 2004) (collecting cases). In relying entirely on Canal's potential liability under the MCS-90 endorsement, Lopez has made no attempt to present any evidence, or even argument, showing that the vehicle was a covered auto for the purposes of the Policy's separate indemnification clause. *See generally* Lopez Resp.

Though the Munoz Defendants also rely heavily on the MCS-90 endorsement, they additionally argue that "fact issues exist as to whether the [Truck] was 'acquired' by XMEX and therefore was a covered vehicle under the Policy." Munoz Resp. 8, 24. In support of that position, the Munoz Defendants cite to portions of a June 20, 2011, deposition of Strader. *See id.* at 14-16; *see also* June 20, 2011, Dep. of Charles Strader ("Strader Deposition"), Munoz Defs.' Supplemental App. of Evidence in Supp. of their Mot. for Summ. J. on Pl. Canal Ins. Co.'s Duty to Pay Based on the MCS-90 Endorsement and Resp. to Canal's Mot. for Summ. J. on the Duty to Indemnify Ex. E, ECF No. 119. The excerpt of the Strader Deposition does not raise a

genuine issue that the Truck was a covered temporary substitute vehicle.  At his deposition, Strader stated that by August 17, 2010, he had "started securing trucks" for XMEX, but did not indicate in any way that XMEX secured, or even attempted to secure, either a Moore Freight automobile or the Truck specifically.  *See* Strader Dep. 15.  Moreover, nothing in the Strader Deposition even hints that XMEX sought to acquire any vehicle as a temporary substitute for a covered auto XMEX owned that was out of service.  Nor do any facts in the Strader Deposition either address or contradict Strader's testimony that Moore Freight never granted XMEX permission to use Moore Freight's equipment.  *See* Strader Test. 42.  Accordingly, the Strader Deposition falls far short of showing a genuine issue of fact as to whether XMEX had obtained the Truck with the permission of Moore Freight as a temporary substitute vehicle for a covered auto XMEX owned – as the Munoz Defendants must show to survive summary judgment.  *See* Policy 29.

Therefore, the Court finds that both Lopez and the Munoz Defendants have failed, despite having nearly two years to conduct discovery, to "designate [any] specific facts showing that there is a genuine issue" that the Truck was a "covered auto" under the Policy.  *See Nola Spice*, 783 F.3d at 536.  As a result, Canal "has shown the absence of a genuine issue of material fact concerning" the Truck's coverage under the Policy, and is entitled to summary judgment that it owes no duty to indemnify under the Policy's indemnification clause.[7]  *See Dilworth v. Box*, No. 94-41088, 53 F.3d 1281, at *3 (5th Cir. Apr. 20, 1995); *see also Celotex*, 477 U.S. at 322.

---

[7] Canal argues that "because Franceware and Munoz were either employees or statutory employees of [XMEX], no duty to indemnify either [XMEX] or Strader or Munoz or Franceware exists for the judgments rendered for the claimants seeking recovery through them or against them."  Canal Mot. 8.  Because the Court has resolved the issue of Canal's duty to indemnify based on the lack of evidence establishing that the Truck was a covered auto, the Court need not address Canal's additional argument.

### 2. The Court stays determination of Canal's liability under the MCS-90 endorsement pending resolution of the state court appeals

The Munoz Defendants argue that the MCS-90 endorsement obligates Canal to pay the Underlying Judgment against XMEX because, *inter alia*, the Jury Verdict "established that Munoz was not an XMEX employee" and therefore the endorsement's employee exclusion does not negate coverage. Munoz Mot. 7. Canal responds that the Jury Verdict is not determinative of Munoz's employment status because the definition of "employee" submitted to the jury did not comport with the federal definition of "employee" that is relevant in interpreting MCS-90 endorsements. Canal Resp. to Munoz 6. Lopez asserts that, though "the [Underlying Suit] developed and adjudicated [the Decedents'] employment status with XMEX[,] . . . that adjudication is incomplete, because multiple parties appealed the trial court's judgment." Lopez Resp. 5.

"[An] MCS-90 endorsement must be attached to any liability policy issued to for-hire motor carriers operating motor vehicles transporting property in interstate commerce." *See Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) (citing 49 C.F.R. §§ 387.3, 387.7). "The purpose of [an] MCS-90 endorsement is to 'assure compliance' with federal minimum levels of financial responsibility for motor carriers." *Id.* "Basically, the MCS-90 makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy." *Larsen Intermodal*, 242 F.3d at 671. An insurer's obligations under an MCS-90 endorsement "impose different obligations based on different requirements" from those under a policy's indemnification clause. *See Yeates*, 584 F.3d at 882. Nonetheless, the Fifth Circuit has stated that an analysis of an insurer's duty under an MCS-90 endorsement, like its duty to indemnify

under an indemnification clause, is "determined by all the facts and circumstances that result in the insured's potential liability." *See Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 477 (5th Cir. 2009) (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)). Accordingly, the Court, as it did in analyzing Canal's duty to indemnify under the Policy's indemnification clause, looks first to the "facts proven in the underlying suit" to determine Canal's obligations under the MCS-90 endorsement. *See Gilbane Bldg. Co.*, 664 F.3d at 601.

Here, coverage under the Policy's MCS-90 endorsement "does not apply to injury to or death of [XMEX's] employees while engaged in the course of their employment." *See* Policy 54. The Munoz Defendants argue that this employee exclusion does not bar coverage because "the [Jury Verdict] established that Munoz was not an XMEX employee." *See* Munoz Resp. 7. Interpretation of the MCS-90 endorsement is governed by federal law. *See Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 470 (5th Cir. 2005). Therefore, the federal definition of "employee" found in 49 C.F.R. § 390.5 "clearly applie[s]" to a determination of coverage under the MCS-90 endorsement. *See Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 367 n.7 (5th Cir. 2002). Section 390.5 defines "employee" as:

> [A]ny individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (*including an independent contractor* while in the course of operating a commercial motor vehicle).

49 C.F.R. § 390.5 (emphasis added); *see also Ooida Risk*, 579 F.3d at 473; *Consumers Cnty.*, 307 F.3d at 365.

The Munoz Defendants are correct that the jury found that Munoz was not "an employee in the scope of his employment for [XMEX]" at the time of the accident.  *See* Jury Verdict 101.  However, § 390.5 has "eliminat[ed] the common law employee/independent contractor distinction" for the purposes of coverage under MCS-90 endorsements.  *See Consumers Cnty.*, 307 F.3d at 366.  "Both the modern common law . . . and the law of Texas make the distinction between [a common law employee] and that of independent contractor turn on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract."  *See Logue v. United States*, 412 U.S. 521, 527 (1973); *see also Schievink v. Wendylou Ranch, Inc.*, 227 S.W.3d 862, 866 (Tex. App. 2007) ("An independent contractor has been defined as 'any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details.'" (quoting *Indus. Indem. Exch. v. Southard*, 160 S.W.2d 905, 907 (Tex. 1942))); Restatement (Second) of Agency § 2(3) (1958).  Here, as charged to the state jury, Munoz was XMEX's "employee" only if he was "in the service of [XMEX] under a contract of hire . . . with the understanding that [XMEX] *ha[d] the right to direct the details of the work and not merely the result to be accomplished*."  *See* Jury Verdict 96.  Accordingly, by requiring a finding that XMEX had the right to control the details of Munoz's work, the state court's jury charge precluded a finding that Munoz was an XMEX "employee" for the purposes of the MCS-90 endorsement based on an independent contractor relationship.  As a result, the Jury Verdict does not fully determine Munoz's employment status as defined under federal law.

Further, the MCS-90 endorsement obligates Canal to pay any "final judgment" recovered against XMEX. *See* Policy 54. The parties dispute whether the Underlying Judgment, which is currently on appeal, is a "final judgment" under the MCS-90. Relying on a state law interpretation of "final judgment," the Munoz Defendants argue that the state trial court's judgment is final because under Texas law "although *enforcement* of a final judgment may be *suspended* (superseded) during the pendency of an appeal . . . the pendency of an appeal does not affect its finality." *See* Munoz Mot. 15. Both Canal and Lopez, on the other hand, relying on *United States v. Lemaire*, 826 F.2d 387 (5th Cir. 1987), argue that the "federal definition [of 'final judgment'] refers to a judgment after all appeals have been exhausted." *See* Lopez Resp. 6; *see also* Canal Resp. to Munoz 13-16. After review of the parties' authorities, and upon the Court's independent research, the Court has found no authority directly addressing the meaning of "final judgment" under federally mandated MCS-90 endorsements. Nonetheless, because, as discussed below, the subject of the parties' pending state court appeals counsels against ruling on the MCS-90 at this time, the Court does not reach the issue of whether the Underlying Judgment is a "final judgment" within the meaning of the MCS-90.

Canal's obligations under the MCS-90 endorsement are controlled by the facts proven in the Underlying Suit. *See Gilbane Bldg. Co.*, 664 F.3d at 601; *Ooida Risk*, 579 F.3d at 477. Though the Court has found that the Underlying Judgment does not fully determine the Decedents' employment statuses under § 390.5's definition of "employee," at least one party has appealed the Underlying Judgment on the ground that an "additional element [in the definition of 'employee'] materially changed the definition [of 'employee'] and materially affected the jury's assessment of course and scope of employment." *See* Docketing Statement 16, Lopez Resp. Ex.

C, ECF No. 116-3.  Accordingly, though it is not clear what "additional element" is at issue on appeal, the Court finds that the Decedents' employment status is not sufficiently developed at this time for the Court to rule on Canal's liability under the MCS-90 endorsement.  The Court accordingly denies both the Canal Motion and the Munoz Motion in so far as they seek a determination of Canal's liability under the MCS-90, without prejudice to re-file after resolution of the state court appeals.[8]

### III.  CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Canal Motion, ECF No. 107, is **GRANTED** in part and **DENIED** in part.  The Canal Motion is **GRANTED** to the extent it seeks a declaration that Canal has no duty to indemnify under the indemnification clause found at page 29 of the Policy.  The Canal Motion is **DENIED** to the extent that it seeks a declaration that Canal has no duty under the federally mandated MCS-90 endorsement found at page 54 of the Policy.

**IT IS FURTHER ORDERED** that the Munoz Motion, ECF No. 109, is **DENIED** in its entirety.

---

[8] Though the Court considered evidence outside the Underlying Judgment and Jury Verdict in determining Canal's liability under the Policy's indemnification clause, the Court did so because whether the Truck was a covered vehicle under the Policy, a factual determination necessary to Canal's duty under the indemnification clause, was not adjudicated, or even addressed, by the Underlying Suit.  *See* Policy 29; Underlying J.; Jury Verdict.  In relation to coverage under the MCS-90 endorsement, however, both the Underlying Judgment and the Jury Verdict addressed the Decedents' employment status, which is highly relevant to the applicability of the MCS-90 endorsement.  *See* Underlying J. 66-67; Jury Verdict 100-101.  Accordingly, because Canal's obligations under the MCS-90 endorsement are determined by the facts proven in the Underlying Suit, *see Gilbane Bldg. Co.*, 664 F.3d at 601; *Ooida Risk*, 579 F.3d at 477, and because those issues are currently on appeal, the Court stays consideration of Canal's liability under the MCS-90 until resolution of the state court appeals.

Further, both Canal and Lopez agree that Munoz is not now entitled to summary judgment because the MCS-90 issue is not ripe due to the state court appeal.  Canal Resp. to Munoz 16; Lopez Resp. 6.

**IT IS FURTHER ORDERED** that the Clerk shall **ADMINISTRATIVELY CLOSE** the Case pending resolution of the state court appeal. Any party may file a petition with the Court to re-open the Case upon final resolution of all state court appeals, or upon settlement.

**SO ORDERED**.

SIGNED this 21st day of August, 2015.

*Kathleen Cardone*
_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE